IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AARON K. CARTER, 179415<br>DELAWARE CORRECTIONAL CENTER<br>1181 PADDOCK ROAD<br>SMYRNA, DE 19977,<br><br>          Plaintiff,<br><br>          v.<br><br>COMMISSIONER STANLEY TAYLOR,<br>WARDEN THOMAS CARROLL, DR.<br>TAMMY Y. KASTRE, FCM,<br>LINDA HUNTER – FCM – CMS<br>CORRECTIONAL MEDICAL SYSTEMS,<br>S/LT. ALISHA PROFACI<br>LT. PETER FORBES,<br><br>          Defendant. | C.A. No. 06-561 SLR<br><br>TRIAL BY JURY DEMANDED |

**MEMORANDUM OF POINTS AND AUTHORITIES OF
CORRECTIONAL MEDICAL SERVICES, INC., IN SUPPORT
OF ITS MOTION TO DISMISS**

Defendant, Correctional Medical Services, Inc., through its undersigned counsel, hereby respectfully moves this Honorable Court to enter the attached Order, dismissing plaintiff's Complaint with prejudice and, in support thereof, avers as follows:

### I.     STATEMENT OF FACTS AND PROCEDURAL POSTURE

Correctional Medical Services, Inc. ("CMS") is a private corporation that has contracted with the State of Delaware to provide medical services in Delaware prisons beginning on July 1, 2005.[1] The Complaint in this matter was filed under 42 U.S.C. § 1983 on September 11, 2006. D.I. 2.  The following is a summary of the "facts" asserted by plaintiff in his Complaint.  D.I. 2.

Plaintiff claims that as a result of an altercation with another inmate on March 1, 2004 he was placed in the Secured Housing Unit (SHU).  The inmate was not provided representation at

---

[1] Prior to July 1, 2005, CMS had contracted with the State of Delaware to provide medical care from July 1, 2000 until June 30, 2002.

the hearing, nor could he call any witnesses, and the incident was as a direct result of the inmate being "AIDS defined".

The inmate further claims he is infected with HIV, and generally, claims at some point in time he suffered from rashes, dizziness, weight loss and other medical conditions were brought to the attention of "defendants", through grievances and letters, and the same were "ignored."

He asserts that many inmates in the SHU and Multi-Housing Unit (MSU) and Building 21 have HIV/AIDS/hepatitis C, and other chronic illnesses that are denied treatment "unless they are falling out of their cells". The inmate further asserts that it "often takes months to be seen by [a] doctor" and that "plaintiff has went [sic] months without seeing a doctor or receiving medication". The inmate recounts an episode of passing blood in his urine, being ignored by a nurse, submitting numerous sick call slips that were ignored and, eventually, passing a kidney stone. Dr. Niaz (First Correctional Medical) stated that the inmate is resistant to all current medications but four. Part of the inmate's problem is that he is unable to take medication at prescribed times. According to the inmate, he has written to Dr. Kastre (First Correctional Medical) concerning the lack of medical treatment and received no response, and written to Defendants Taylor and Carroll concerning various medical and housing problems. All correspondence has been ignored.

Plaintiff claims that between June 30, 2005 - July 10, 2005, he experienced passing blood, rashes, dizziness, weight loss which was "coupound [sic] by refusal to refill medications."

Further, the ill inmates in SHU, MSU and Building 21 are forced to walk to interviews and the main hospital with waist chains, leg shackles, without canes, walkers or wheelchairs. The inmate, and others located in the SHU, MSU and Building 21, receive cold food, fail to receive their coffee and juice with their meals. Cold food often causes the plaintiff to be severely sick. The inmate is supposed to get double portions of food, but has not since 2004.

The relief requested by the plaintiff includes class certification on behalf of the ill inmates housed in the SHU, MSU and Building 21 and that counsel be appointed to protect the

interest of the class; declaratory judgment determination that the medical treatment and living conditions of the inmates with HIV/AIDS/hepatitis C, and other chronic illnesses in SHU, MSU and Building 21 are unconstitutional, violative of the Americans With Disabilities Act (ADA) and unlawful; and preliminary and permanent injunctions to immediately provide the inmates with HIV/AIDS/hepatitis C, and other chronic illnesses, in SHU, MSU and Building 21 with appropriate medical specialists, adequate and appropriate medical care, hot meals and adequate diagnosis and culturing of opportunistic infections; and, finally, punitive damages in the amount of one million dollars.

This is the Memorandum of Points and Authorities by CMS in Support of its Motion to Dismiss Plaintiff's Claims.

## II.  STANDARD OF REVIEW

A claim may be dismissed because it fails to allege sufficient facts to support a cognizable legal claim.[2] A complaint "must provide the defendants with fair notice of what plaintiff's claim is and the grounds upon which it rests."[3] Specifically, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations.[4] Additionally, even a *pro se* litigant must plead sufficient facts to sustain a legal claim.[5]

A motion to dismiss for failure to state a claim upon which relief can be granted should be granted in the event that it is "beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[6] However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."[7]

---

[2]  Fed. R. Civ. P. 12 (b)(6).
[3]  *United States v. City of Philadelphia*, 644 F.2d 187, 204 (3d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).
[4]  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(citing *Boykins v. Ambridge Area Scholl District*, 621 F.2d 75, 80 (3d Cir. 1980); *Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir. 1978)).
[5]  *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).
[6]  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).
[7]  *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 6 (3d Cir. 1997)(citing *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)(quoting *Glassman v. Computervision*

### III.  LEGAL ARGUMENTS

### A.  Plaintiff Fails To State A Claim For A Constitutional Violation Against CMS When Plaintiff Fails To Allege Personal Involvement By CMS

In order to be liable in a civil rights action, a defendant must have personal involvement in the alleged wrongs.[8] "Personal involvement" may be demonstrated through "allegations of personal direction or of actual knowledge and acquiescence." These allegations, however, must be made with appropriate particularity.[9] Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff.[10]

Plaintiff fails to allege "personal involvement" by CMS. Under plaintiff's Statement of Claim, there is one mention of CMS and plaintiff asserts, "[a]s a result of …Correctional Medical Services refusal to see inmates housed in SHU, MSU and Building 21 *in a confidential manner*, the status of plaintiff and other inmates with HIV/AIDS/Hep C, and other chronic illnesses. Has resulted in inmates with the aforemention [sic] including plaintiff being harassed and discriminated against by both inmates and correctional staff."  D.I. 2 at § IV (emphasis supplied).

---

*Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)); *citing* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1997) (noting that courts, when examining 12(b)(6) motions, have rejected "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations"); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) (affirming dismissal of § 1983 action and noting that "while the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

[8] Specifically, the Third Circuit has held that:

> A defendant is a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicate solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal discretion or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)(citations omitted).

[9] Id.

[10] *Smaple v. Diecks*, 885 F.2d 1099, 1117-118 (3d Cir. 1989; *see also City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Correctional Institute for Women*, 128 Fed.Appx. 240 (3d Cir. 2005).

Even assuming, *arguendo*, that the inmate has identified a "serious medical need" in his Complaint, he fails to identify any conduct by CMS that rises to the level of deliberate indifference to a prisoner's serious illness or injury, nor does he identify a specific time when these constitutional violations occurred.  In fact, plaintiff does not claim a denial of medical care, or a refusal to provide medical care and treatment, but instead objects to the lack of treatment in a "confidential manner" by CMS.

The only other allegation that could, arguably, be construed as against CMS is the statement that "from June 30, 2005 - July 10, 2005, he experienced passing blood, rashes, dizziness, weight loss" which was "coupound [sic] by refusal to refill medications." D.I. 2 at § IV.  There is no mention of the person or persons responsible for any alleged refusal to refill medications, or the time period when the alleged refusal occurred.[11]   CMS is entitled to such specificity.  This Complaint must be dismissed against CMS.  Moreover, to state a claim against CMS, a private corporation rather than a person, a discrete standard applies.

### 1. CMS cannot be held liable under a theory of *respondeat superior.*

To the extent that plaintiff's allegations in the Complaint can be construed as against CMS, the allegations appear to be grounded solely under a theory of *respondeat superior*.  Under *Monell v. Department of Social Services of New York,* a municipality cannot be held liable under a theory of *respondeat superior*.[12] These principles likewise apply to the liability of private

---

[11] Many of the allegations in the Complaint reference no time period.  To the extent that any of plaintiff's claims occurred more than two years prior to the filing of the instant Complaint, those claims are time-barred. *McDowell v. Delaware State Police,* 88 F.3d 188, 190 (3d Cir. 1996);  *Carr v. Town of Dewey Beach,* 730 F. Supp. 591 (D. Del. 1990); *Marker v. Talley,* 502 A.2d 972 (Del. Super. Ct. 1985).

[12] 436 U.S. 658 (1978).  *See also Heine v. Receiving Area Personnel*, 711 F.Supp. 178, 185 (D.Del. 1989) ("Traditional concepts of *respondeat superior* do not apply to civil rights actions brought pursuant to 42 U.S.C. § 1983.")

corporations offering health care services.[13] CMS cannot be held liable for a constitutional violation as an abstract entity.[14]

### 2. Plaintiff fails to assert a policy or custom of deliberate indifference to his serious medical needs.

Plaintiff fails to state a claim against CMS since he fails to even allege a policy or custom applied by CMS, nor does he allege that a CMS official, who has the power to make policy, is responsible for either i) an affirmative proclamation of a policy of deliberate indifference to his serious medical needs or ii) acquiescence in a well-settled custom of deliberate indifference to his serious medical needs.

While a municipality cannot be held liable under a theory of *respondeat superior*, it can be held liable for a policy or custom that demonstrates deliberate indifference.[15] "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict."[16] Specifically, municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered."[17] Second, only those officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability.[18] Third, whether a particular official has "final policymaking authority" is a question of state law.[19] Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy.[20]

---

[13] *Miller v. Correctional Medical Systems, Inc.*, 802 F. Supp. 1126, 1132 (citing *Guyer v. Correctional Medical Systems, Inc.*, C. A. No. 86-361-JLL, Magistrate's Report and Recommendation, slip. op. at 3 (D. Del. Apr. 16, 1990)(adopted by final order May 14, 1990)).
[14] *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1063 (3d Cir. 1991).
[15] *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978).
[16] *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)(quoting *Pembaur v City of Cincinnati*, 475 U.S. 469, 481 (1986)).
[17] *Penbaur*, 475 U.S. at 480.
[18] *Id* at 483.
[19] *Id*.
[20] *Id*. at 482-483, and n.12.

In *St. Louis v. Praprotnik,* the Supreme Court made it clear that "the authority to make municipal policy is necessarily the authority to make *final* policy."[21] There can be no *de facto* final policymaking authority.[22] Moreover, "it is self-evident that official policies can only be adopted by those legally charged with doing so...[the Supreme Court] are aware of nothing in § 1983 or its legislative history…that would support the notion that unauthorized acts of subordinate employees are official policies because they may have the "potential" to become official policies or may be "perceived as" official policies.[23]

Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.[24] A single isolated incident…cannot establish an official policy or practice of the municipality sufficient to render it liable for damages under 1983.[25] In either instance, when a plaintiff alleges as unconstitutional policy or an unconstitutional custom, *a plaintiff must allege that the official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.*[26]

Plaintiff has neither alleged *any* policy or custom, let alone any *specific* policy or custom, of CMS that proximately caused deliberate indifference to his serious medical needs, nor identified any CMS official who has the power to make such a policy, nor articulated any facts that would tend to support a claim of "an official proclamation, policy or edict", nor any "well-settled and permanent course of conduct" by CMS. CMS is entitled to dismissal of this Complaint against it.

---

[21] 485 U.S. 112, 127 (1987).
[22] *Id.* at 131.
[23] *Praprotnik*, 485 U.S. at 125.
[24] *Andrews*, 895 F.2d at 1480; *see also Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989) ("Custom may be established by proof of knowledge and acquiescence.").
[25] *Oklahoma City v. Tuttle*, 471 U.S. 808 (1988).
[26] *Andrews*, 895 F.2d at 1480.

CMS may only be held liable for a policy or custom that demonstrates deliberate indifference to plaintiff's serious medical needs.[27] The Complaint does not name an individual health care provider, nor does it attribute "personal involvement" to any individual employee of CMS.  D.I. 2.  More importantly, Plaintiff has failed to allege any unconstitutional policy or custom against CMS, nor has he alleged that the execution of such policy or custom caused any constitutional tort.

### B. Plaintiff Has No Standing to Assert Class Action Certification

Plaintiff requests that this matter be certified as a "class action."  D.I. 2 at § V.  However, "courts have consistently held that a prisoner acting *pro se* is inadequate to represent the interests of his fellow inmates in a class action."[28]  Therefore, to the extent that plaintiff attempts to assert claims on behalf of anyone but himself, those claims should be dismissed.

### C. Plaintiff Fails To State A Claim Under the Americans With Disabilities Act ("ADA")

To establish a *prima facie* case under Title II of the ADA the plaintiff must show that: "(1) he is a 'qualified person with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability."[29]  Plaintiff has not alleged any facts that demonstrate that he was "excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity" because of any "disability".  Therefore, to the extent that plaintiff attempts to assert claims under the ADA, those claims should be dismissed.

---

[27] *Miller v. Correctional Medical Systems, Inc.,* 802 F. Supp. 1126 (D. Del. 1992)(*citing Monell v. Dept. of Social Services*, 436 U.S. 658 (1978)).

[28] *Jordan v. Delaware*, 433 F. Supp. 2d 433, 439 (D. Del. 2006), *citing Brathwaite v. Taylor,* No. 00-435-GMS, 2001 WL 1117134, at *2 n.3 (D. Del. Sept. 13, 2001)(further citations omitted).

[29] *Jordan v. Delaware*, 433 F. Supp. 2d 433, 439 (D. Del. 2006)(citing *Gorrell v. Del. State Police,* No. 98-649-SLR, 1999 WL 1893142, at *3 (D. Del. Oct. 20, 1999).

## IV.    CONCLUSION

Based upon the foregoing, all claims against Defendant, Correctional Medical Services, Inc., should be dismissed pursuant to Federal Rule of Civil Procedure 12 (b)(6) for failure to state any claim upon which relief can be granted.  Accordingly, Defendant, Correctional Medical Services, Inc., respectfully requests that the Motion to Dismiss filed contemporaneously herewith be granted, with prejudice.

                                    MARSHALL, DENNEHEY, WARNER,
                                    COLEMAN AND GOGGIN

                        BY:    /s/Lorenza A. Wolhar
                                    LORENZA A. WOLHAR, (DE ID # 3971)
                                    1220 N. Market Street, 5th Floor
                                    P.O. Box 8888
                                    Wilmington, DE  19899-8888
                                    (302) 552-4300
                                    Attorneys for Defendant, Correctional Medical
                                    Services, Inc.

**DATED:  May 14, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AARON K. CARTER, 179415<br>DELAWARE CORRECTIONAL CENTER<br>1181 PADDOCK ROAD<br>SMYRNA, DE 19977,<br><br>            Plaintiff,<br><br>       v.<br><br>COMMISSIONER STANLEY TAYLOR,<br>WARDEN THOMAS CARROLL, DR.<br>TAMMY Y. KASTRE, FCM,<br>LINDA HUNTER – FCM – CMS<br>CORRECTIONAL MEDICAL SYSTEMS,<br>S/LT. ALISHA PROFACI<br>LT. PETER FORBES,<br><br>            Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 06-561 SLR<br><br>TRIAL BY JURY DEMANDED |

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2007, I electronically filed the Memorandum of Points and Authorities of Correctional Medical Services, Inc, in Support of its Motion to Dismiss with the Clerk of the Court using CM/ECF and I have mailed by United States Postal Service, the Memorandum of Points and Authorities of Correctional Medical Services, Inc, in Support of its Motion to Dismiss to the following non-registered participant:

Aaron K. Carter
SBI# 179415
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

                         MARSHALL, DENNEHEY, WARNER,
                         COLEMAN & GOGGIN


      BY:    */s/ Lorenza A. Wohar*
                 LORENZA A. WOLHAR, ESQUIRE (DE I.D. #3971)
                 1220 North Market Street, 5th Fl.
                 P.O. Box 8888
                 Wilmington, DE 19899-8888
                 (302) 552-4300
                 Attorneys for Defendant, Correctional Medical Services, Inc.