# EXHIBIT A

# Corbett & Wilcox

230 North Market Street • Wilmington, DE 19801• phone 302.571.0510 • fax 302.571.1321
15 East North Street • Dover, DE 19901 • phone 302.734.3534 • fax 302.734.3552
Corbett & Wilcox is not affiliated with Wilcox & Fetzer, Court Reporters

Job #: 080111RWW
Job Date: 01/11/2008
Order Date: 01/11/2008

DB Ref.#:
Date of Loss:  / /
Your File #:
Your Client:

# Packing Slip

Pack. Slip #:    98257
Date:    01/14/2008

**Deliver To:**
**Stacy Xarhoulakos, Esq**
**Department of Justice**
**Carvel State Building**
**820 North French Street**
**6th Floor**
**Wilmington, DE 19801**

Action:  Carter, Aaron K
VS
Correctional Medical Services

Action #:

Rep:  Robert W. Wilcox, Jr.

Cert:

| Item | Proceeding/Witness | Description | | Quantity |
|------|--------------------|-------------|---|----------|
| 1 | Aaron K. Carter | Copy of Proceedings | Pages | 8 |
| 2 | Aaron K. Carter | Min-U-Script | Book | 1.00 |
| 3 | | Hand Delivery | Dollars | 1.00 |

Comments:
If paid within 30 days, please pay $27.95

Thank you for your business.

Client Copy

*Please Fold Here and Return This Part To Our Office*

Received by: _____

Date: _____

Delivered by: _____

# Packing Slip

# Corbett & Wilcox

230 North Market Street • Wilmington, DE 19801• phone 302.571.0510 • fax 302.571.1321
15 East North Street • Dover, DE 19901 • phone 302.734.3534 • fax 302.734.3552
Corbett & Wilcox is not affiliated with Wilcox & Fetzer, Court Reporters

**Deliver To:**
Stacy Xarhoulakos, Esq
Department of Justice
Carvel State Building
820 North French Street
6th Floor

OFFICE OF
ATTORNEY GENERAL

JAN 1   2008

RECEIVED
CORRECTION UNIT

Pack. Slip #: 98257
Date: 01/14/2008
Job #: 080111RWW
Job Date: 01/11/2008
DB Ref.#:
Date of Loss:  / /
Your File #:
Your Client:

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

AARON K. CARTER, 179415      )
DELAWARE CORRECTIONAL CENTER )
1181 PADDOCK ROAD            )
SMYRNA, DE 19977,            )
                            )
        Plaintiff,           )
                            )
v.                          )
                            )  C.A. No. 06-561
                            )
COMMISSIONER STANLEY TAYLOR, )
WARDEN THOMAS CARROLL, DR.   )
TAMMY Y. KASTRE, FCM,        )
LINDA HUNTER - FCM - CMS     )
CORRECTIONAL MEDICAL SYSTEMS,)
S/LT. ALISHA PROFACI         )
LT. PETER FORBES,            )
                            )
        Defendants.          )

        Deposition of AARON K. CARTER taken pursuant to
notice at the Delaware Correctional Center, 1181 Paddock
Road, Smyrna, Delaware, beginning at 10:10 a.m. on
Friday, January 11, 2008, before Robert Wayne Wilcox,
Jr., Registered Professional Reporter and Notary Public.

APPEARANCES:

        AARON K. CARTER (pro se)
        SBI# 179415
          Delaware Correctional Center
          1181 Paddock Road
          Smyrna, Delaware  19977
          for the Plaintiff,

                CORBETT & WILCOX
230 North Market Street - Wilmington, Delaware 19801
                (302) 571-0510

          Corbett & Wilcox is not affiliated
        with Wilcox & Fetzer, Court Reporters

Aaron K. Carter

Page 2

```
 1    APPEARANCES (CONT'D):

 2            STACEY XARHOULAKOS, ESQ.
              DEPARTMENT OF JUSTICE
 3              Carvel State Office Building
                820 North French Street
 4              Wilmington, Delaware  19801
                for the Defendants Commissioner Stanley Taylor,
 5              Warden Thomas Carroll, S/LT. Alisha Profaci and
                Lt. Peter Forbes,
 6
              ERIC SCOTT THOMPSON, ESQ.
 7            MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
                1220 North Market Street - 5th Floor
 8              Wilmington, Delaware  19801
                for the Defendant CMS, Correctional Medical
 9              Services.

10                          - - - - -

11                    (The reporter attempted to administer

12    the oath, at which time the witness stated he did not

13    wish to answer any questions without an attorney

14    present.)

15                    MR. THOMPSON:  We'll just put this on

16    the record so that we're all clear on this.

17                    You just indicated without an attorney

18    present you do not wish to answer any questions.

19                    MR. CARTER:  Correct.

20                    MR. THOMPSON:  Okay.  This is your

21    lawsuit.  Correct?

22                    MR. CARTER:  Yes.

23                    MR. THOMPSON:  You filed this lawsuit?

24                    MR. CARTER:  Yes.
```

Aaron K. Carter

Page 3

1              MR. THOMPSON:  And you're currently not

2    represented in this lawsuit?

3              MR. CARTER:  Right.

4              MR. THOMPSON:  Correct?

5              MR. CARTER:  (Indicating.)

6              MR. THOMPSON:  Okay.

7              MR. CARTER:  With some help.

8              MR. THOMPSON:  Well, have you sought

9    representation?

10             MR. CARTER:  No.  I've never done this

11   before, so I don't know -- I didn't know this was going

12   on -- what this entailed, what it's about.  But I don't

13   want to answer any questions without an attorney.  I

14   don't want to do this without an attorney advising me

15   what to do.

16             MS. XARHOULAKOS:  Mr. Carter, my name is

17   Stacey Xarhoulakos.  I represent the defendants who work

18   for the Department of Correction.

19             Do you understand that this is a civil

20   case and not a criminal case?

21             MR. CARTER:  Yes.

22             MS. XARHOULAKOS:  Okay.  And you

23   understand that this is your lawsuit that you filed?

24             MR. CARTER:  Right.

Aaron K. Carter

Page 4

1                    MS. XARHOULAKOS:  Do you understand that

2        there are rules that are followed in the courts?  The

3        rules that you follow to file your complaint, file your

4        answer, they're called Federal Rules of Civil Procedure.

5                    MR. CARTER:  I assume there's rules, but

6        I don't know them.  Someone is assisting me in this.  I

7        don't know how to do this.

8                    MS. XARHOULAKOS:  Did you receive our

9        discovery requests that we sent to you, the

10       interrogatories and requests for production -- the

11       documents that we sent asking you for information?

12                   MR. CARTER:  Right.  I asked someone

13       to -- the response was -- for some help.

14                   MS. XARHOULAKOS:  Okay.  But you did

15       receive those; correct?

16                   MR. CARTER:  Yes.

17                   MS. XARHOULAKOS:  Okay.  Do you

18       understand that in a civil case you're not

19       constitutionally entitled to an attorney in a civil

20       proceeding?  Do you understand that?

21                   MR. CARTER:  No.

22                   MS. XARHOULAKOS:  Okay.

23                   MR. CARTER:  You're telling me this.  I

24       never heard this before.

Aaron K. Carter

Page 5

1                    MS. XARHOULAKOS:  Okay.  Well, this is a

2     civil case.  It's your case.  And we're here to depose

3     you for discovery.  It's a fact finding to get

4     information about the case.  You are required under the

5     rules to answer questions so that we can find out about

6     the case and what your claims are.  And although Courts

7     can appoint counsel in their discretion, you're not

8     constitutionally entitled to an attorney in a civil

9     proceeding.  So it's your choice.  I can't make you

10    answer questions today, of course.  But I do have an

11    obligation to tell you that the rules allow the

12    deposition to occur in a civil proceeding.

13                    Do you understand that?

14                    MR. CARTER:  Yes.

15                    MS. XARHOULAKOS:  Okay.  Is it still

16    your position that you do not want to answer questions?

17                    MR. CARTER:  Yes.  I'll try to seek an

18    attorney.

19                    MS. XARHOULAKOS:  Okay.  And just so you

20    understand, based on your failure to answer any

21    deposition questions, more than likely we will file a

22    motion to dismiss the case because you're not agreeing to

23    participate in discovery.  Do you understand that?

24                    MR. CARTER:  I failed to participate

Page 6

1   without an attorney present.

2                    MS. XARHOULAKOS:  Okay.

3                    MR. CARTER:  I mean, when I get an

4   attorney, then I'll participate with his guidance.  I

5   don't know what I'm doing on this.

6                    MS. XARHOULAKOS:  I just wanted to

7   establish on the record my obligation to tell you, you

8   know, what rights I think you have and what the rules

9   state.  And I just want to make sure that that's your

10  position after knowing all of that.  Correct?

11                   MR. CARTER:  Yes.

12                   MS. XARHOULAKOS:  Okay.  Mr. Thompson.

13                   MR. THOMPSON:  I guess I don't have

14  anything further.  I represent CMS.  My name is Eric

15  Thompson, by the way.  I guess the next step -- we'll

16  file a motion to dismiss the case.  Okay?

17                   MR. CARTER:  Okay.

18                   MR. THOMPSON:  Thank you.

19                   MR. CARTER:  I will attempt to obtain an

20  attorney.  So that's all I can do.  I'm not willing to do

21  this without an attorney.  I don't know what I'm doing.

22  What benefit do I get out of doing something I don't even

23  know what I'm doing?  I'm just trying to protect myself.

24  And I'm going to attempt to get an attorney.  So I just

Aaron K. Carter

Page 7

1    want that on the record.

2                    MS. XARHOULAKOS:  Okay.  Thank you.

3                    MR. THOMPSON:  Thank you.

4                    (The deposition concluded at 10:15 a.m.

5    this same day.)

6                         - - - - -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Aaron K. Carter

Page 8

```
 1                   C E R T I F I C A T E

 2    STATE OF DELAWARE:
                       :
 3    NEW CASTLE COUNTY:

 4              I, Robert Wayne Wilcox, Jr., a Registered

 5    Professional Reporter, within and for the County and

 6    State aforesaid, do hereby certify that the foregoing

 7    matter was taken before me, pursuant to notice, at the

 8    time and place indicated; that the foregoing matter was

 9    correctly recorded in machine shorthand by me and

10    thereafter transcribed under my supervision with

11    computer-aided transcription; that the foregoing hearing

12    is a true record; and that I am neither of counsel nor

13    kin to any party in said action, nor interested in the

14    outcome thereof.

15              WITNESS my hand and official seal this 11th day

16    of January A.D. 2008.

17

18

19    _____
      ROBERT WAYNE WILCOX, JR.
20    REGISTERED PROFESSIONAL REPORTER
      CERTIFICATION NO. 101-RPR
21    (Expires January 31, 2008)

22

23

24
```

# EXHIBIT B

Westlaw

Slip Copy
Slip Copy, 2007 WL 88084 (M.D.Pa.)
**(Cite as: Slip Copy)**

Page 1

**c**
Spencer v. Kelchner
M.D.Pa.,2007.
Only the Westlaw citation is currently available.
United States District Court,M.D. Pennsylvania.
Ravanna SPENCER, Plaintiff
v.
Donald KELCHNER, et al., Defendants.
**No. 3:06-CV-1099.**

Jan. 9, 2007.

Ravanna Spencer, Camp Hill, PA, pro se.

### MEMORANDUM AND ORDER

EDWIN M. KOSIK, United States District Judge.
*1 AND NOW, THIS 9th DAY OF JANU-
ARY, 2007, IT APPEARING TO THE COURT
THAT:

1. Plaintiff, Ravanna Spencer, an inmate con-
fined at the State Correctional Institution at Camp
Hill, commenced the instant civil rights action pur-
suant to 42 U.S.C. § 1983 on May 31, 2006. An
amended complaint was filed on August 21, 2006;

2. The matter was assigned to Magistrate Judge
Thomas M. Blewitt;

3. On September 7, 2006, the Magistrate Judge
filed a thirty-one (31) page Report and Recom-
mendation, wherein he recommended that:
Based on the foregoing, it is respectfully re-
commended that Plaintiff's action as against De-
fendants Kelchner, Beard and Law be dismissed.
Specifically, we find that Defendants Kelchner and
Beard lack sufficient personal involvement in this
case. We find that Defendant Law, by denyi n g
Plaintiff's grievance, is not sufficiently involved in
the case. We also find no conspiracylaim is stated
as to Defendant Law. We find that Plaintiffs Fifth
Amendment Due Process claim with respect to his
placement in the SMU should be dismissed, and
that his Fourteenth Amendment Equal Protection
claim as against all Defendants should be dis-

missed. Further, we find that Plaintiff's claims as
against the Defendants in their official capacities
should be dismissed to the extent that he seeks
money damages. We find that Defendants Southers
and Whaling should be dismissed. We find that
Plaintiff has stated a First Amendment retaliation
claim against Defendant Newton, and that he has
stated Eighth Amendment claims against Defend-
ants Newton, Kalsky and Kahn. Finally, it is recom-
mended that this case be remanded to the under-
signed for further proceedings.

5. While plaintiff requested an extension of
time in which to file objections to the Report and
Recommendation, which was granted by the court,
no objections were filed to the Report and Recom-
mendation;

### AND, IT FURTHER APPEARING THAT:

6. If no objections are filed to a Magistrate
Judge's Report and Recommendation, the plaintiff
is not statutorily entitled to a *de novo* review of his
claims. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,*
474 U.S. 140 (1985). Nonetheless, the usual prac-
tice of the district court is to give "reasoned consid-
eration" to a Magistrate Judge's report prior to ad-
opting it.*Henderson v. Carlson,* 812 F.2d 874, 878
(3d Cir.1987);

7. We have reviewed the Magistrate Judge's
Report and we find the factual and legal analysis to
be thorough and accurate. Therefore, we will adopt
his recommendations in their entirety.[FN1]

> FN1. We note that subsequent to the filing
> of the Report and Recommendation several
> additional filings have been made by the
> plaintiff. We refer these subsequent filings
> to the Magistrate Judge for disposition.

### ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. The Report and Recommendation of Magis-
trate Judge Thomas M. Blewitt dated September 7,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 88084 (M.D.Pa.)
**(Cite as: Slip Copy)**

2006 (Document 22) is adopted in its entirety; and

2. The above-captioned action is remanded to the Magistrate Judge for further proceedings.

### *REPORT AND RECOMMENDATION*

THOMAS M. BLEWITT, United States Magistrate Judge.

Plaintiff, Ravanna Spencer, an inmate at the State Correctional Institution at Camp Hill, Pennsylvania, originally filed this § 1983 civil rights action, *pro se,* on May 31, 2006. (Doc. 1). Plaintiff also filed a motion for leave to proceed *in forma pauperis.* (Doc. 8). Plaintiff simultaneously filed a Motion to Appoint Counsel, which the Court denied on June 22, 2006. (Docs. 2 & 11). Plaintiff's original 15-page Complaint named twenty-two (22) Defendants employed in various capacities by the Pennsylvania Department of Corrections. On June 16, 2006, Plaintiff filed a Motion to Amend his Complaint in order to add new defendants and add new claims not contained in his original lengthy Complaint. (Doc. 7).

**\*2** Upon our initial review of Plaintiff's original Complaint under the Prison Litigation Reform Act of 1995 (the "PLRA"), we found that it contained many unrelated claims against numerous Defendants, in violation of Fed.R.Civ.P. 20(a). We found that Plaintiff's original Complaint did not appear to properly state the personal involvement of each and every named Defendant with the numerous unrelated claims. Nor did we find Plaintiff's original Complaint to be in compliance with Fed.R.Civ.P. 8. We found Plaintiff's original pleading to be completely unmanageable, and it was impossible for Defendants to intelligently respond to it.

Plaintiff claimed, in part, that he received improper medical treatment for his mental health problems (Eight Amendment); that he was improperly placed in the Special Management Unit ("SMU"); that he was deprived of meals; that he was threatened by Corrections Officers ("CO's") and made fun of (Eighth Amendment); that he was

denied due process with respect to his grievances (Fifth Amendment); that he was deprived of yard time and showers without due process since his bed was not made; that he was retaliated against for filing grievances (First Amendment); that excessive force was used on him in transporting him to his cell (Eighth Amendment); that he was cut when restraints were put on him; and that he was deprived of his personal property while in a strip cell wearing a suicide smock. Plaintiff's numerous unrelated claims spanned from March 2006 through May 2006. (Doc. 1).

Thus, on June 22, 2006, we directed Plaintiff to file an Amended Complaint in conformity with Rules 8 and 20(a) of the Federal Rules of Civil Procedure. (Doc. 12). We also gave Plaintiff direction as to how to file his amended complaint and specifically directed that Plaintiff's amended complaint should be limited with respect to only defendants and claims that arise out of the same transaction or occurrence or series of transactions or occurrences, and that have questions of law or fact common to all Defendants and claims. We further directed Plaintiff to file separate actions as to any Defendants and claims that do not share common legal and factual questions and that do not arise out of the same transactions or occurrences.

In violation of the Court's June 22, 2006 Order, Plaintiff filed another Motion for Leave to File an Amended Complaint on July 25, 2006. (Doc. 16). Plaintiff's proposed amended complaint named 29 Defendants and, like his original pleading, contained 70 paragraphs of mostly unrelated claims against numerous Defendants spanning a time period from January 2006 to the present. In fact, Plaintiff's proposed amended pleading, instead of narrowing his claims and Defendants to those that were related and arose out of the same transactions or occurrences, added new claims and new Defendants, and covered a longer period of time than his original pleading did. Plaintiff's proposed amended complaint also contained many of the same claims and Defendants as his original Complaint, and it added new claims and new Defendants. As we stated in our prior Order, it simply would not be possible

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for the 29 Defendants to respond to the myriad of claims against them in the proposed amended complaint, which do not arise out of the same transactions or occurrences. Therefore, we denied Plaintiff's Motion to file an Amended Complaint (Doc. 16), and we directed Plaintiff to file a proper amended compliant in conformance with Rule 8 and Rule 20(a). (Doc. 17).

**\*3** Plaintiff filed a second Motion for Leave to File an Amended Complaint on August 21, 2006. **(Doc.18).** Plaintiff also filed a Memorandum of Law. (Doc. 19). Attached to Plaintiff's Memorandum are exhibits related to grievances Plaintiff filed with the prison. Plaintiff's Motion for Leave to Amend is essentially his amended complaint. We shall grant Plaintiff's Motion for Leave to File an Amended Complaint by separate Order, and direct that the Motion be docketed as his amended complaint. (Doc. 18).[FN1] We shall also direct the Clerk of Court to change the caption to *Plaintiff v. Donald Kelchner,* since Sgt. Maxwell is not named in the Plaintiff's amended complaint. We shall also direct the Clerk of Court to remove the names of all Defendants that were named in Plaintiff's original Complaint (Doc. 1), but who were not named in Plaintiff's Amended Complaint. (Doc. 18).

> FN1. We note that attached to the Motion for Leave to File an Amended Complaint is an Order to Show Cause for an Injunction and /or a TRO. (Doc. 18). Plaintiff also attached to his Motion an explanation of his supporting exhibits that are attached to his Memorandum. If Plaintiff wishes to file an injunction motion with this Court, he must file it in conformity with Local Rule 7.1, M.D. Pa., along with a supporting brief under Rule 7.5

We now screen Plaintiff's amended pleading under the PLRA.

## II. Allegations of Amended Complaint.

In the present case, Plaintiff alleges that on January 11, 2006, he was transferred from another prison to SCI-Camp Hill. Plaintiff states that Defendants Jeffery Beard, Secretary of Pennsylvania Department of Corrections ("DOC"); Donald Kelchner, Superintendent at SCI-Camp Hill; Counselor Whaling; Richard Southers, Unit Manager; Andrew Newton, Psychiatrist; Muhammed Khan, Psychiatrist; and Edward Kalsky, psychologist, were aware that he was supposed to go to a Special Need Unit ("SNU") at the prison.[FN2]However, Plaintiff indicates that he was placed in the SMU (Special Management Unit) instead of the SNU. (Doc. 18, ¶ 13.). Plaintiff states that "on January 13, 2006 I mistakenly signed a "SNU" Special Needs Unit treatment plan when this is not a "SNU" but rather a(SMU) Special Management Unit which is a control unit and is not suitable for a mentally disabled person such as myself...." Plaintiff states that on January 13, 2006, he filed a grievance and that he was denied "his remedy to exhaust." (*Id.*). Thus, Plaintiff indicates that he has not exhausted his administrative remedies, seemingly based on futility. (*Id.*, ¶'s 13., 21.).[FN3]

> FN2. All of the Defendants except for Beard are employed at SCICamp Hill.

> FN3. It is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit. *Id.* at 230.In *Porter v. Nussle,* 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Id.* However, Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes,* 285 F.3d 287, 295 (3d Cir.2002).

Plaintiff avers that a few days afer his griev-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 88084 (M.D.Pa.)
(Cite as: Slip Copy)

ance, Defendant Dr. Newton took him off of his medication as retaliation for his grievance, and that because he was not weaned off of his medication he suffered "excessive bowel movement I couldn't sleep my body was hurting," and that he suffered other physical and mental pain. (*Id.*, ¶ 14.). Plaintiff states that he then filed another grievance against Defendant Newton. We find that Plaintiff has stated a First Amendment retaliation claim against Defendant Newton for allegedly improperly taking him off of his medication due to his grievance.

Plaintiff states that Defendant Dr. Khan saw him for his monthly review on March 8, 2006, and alleges that Dr. Kahn put his mental health history on the "tier." Plaintiff seemingly claims that Dr. Kahn made his mental health history known to the other inmates on Plaintiff's cell block. Plaintiff states that he pleaded with Dr. Kahn to stop and states that the doctor could have taken him into a room for privacy, but the doctor did not. As a result, Plaintiff states that "everybody on the block humiliated me even the guards which eventually led up to me trying to commit suicide...." Plaintiff states that this conduct by Dr. Kahn also caused him to feel emotional pain and humiliated, embarrassed and depressed. Plaintiff filed a grievance on March 22, 2006 against Dr. Kahn, and states that after he tired to commit suicide, "they took all of my property they took the grievance and I never got it back...."(*Id.*, ¶ 15.)

**\*4** Plaintiff avers that Defendant Dr. Newton again took him off of his medication and states that he tired to file another grievance. Plaintiff states that it was rejected since he was told that he already had filed one on that issue. Plaintiff states that they took his grievance "because as a result of Doctor Newton neglect I tried to commit suicide again."(*Id.*, ¶ 16.).

Plaintiff claims that in April 2006, Dr. Newton and Defendant Psychologist Kalsky came to his door and similar to Dr. Kahn's conduct, they "put my mental health history out there so the whole pod could hear and the same process happened people began to humiliate me again...." Plaintiff states that

he filed another grievance over this incident. (*Id.*, ¶ 17.).

Plaintiff states that Defendant Teresa M. Law, medical grievance coordinator at SCI-Camp Hill, denied his mental health grievance "saying that I don't have any mental health issues after she already had her signature on a response that said I was diagnose with a anti-social personality disorder."Plaintiff concludes that Defendant Law "was in concert with the mental health department in denying me mental health treatment."(*Id.*, ¶ 18.).

Plaintiff claims that Defendant Kelchner denied his grievance and said he did not have a mental health issue. (*Id.*, ¶ 19.).

As to Defendant Beard, Plaintiff only states that he violated his Constitutional rights because he knew of the treatment Plaintiff was receiving and he refused to stop his officers. (*Id.*, ¶ 22.). Plaintiff states that he made Defendant Kelchner and Beard aware of his situation when they came to the SMU on May 22, 2006. (*Id.*, ¶ 23.).

Plaintiff sues all of the Defendants in their individual and official capacities. (*Id.*, ¶ 11.). As relief, Plaintiff seeks compensatory and punitive damages as well as injunctive relief. (*Id.*, ¶ 's 35.-41.).

Plaintiff cannot recover monetary damages against Defendants in their official capacities.[FN4]Also, to the extent that Plaintiff seeks compensatory and punitive damages, each in the sum of "$1,000,000 to $3,000,000," such amounts should be stricken.[FN5]

> FN4. Insofar as Plaintiff's attempt to sue the Defendants in their official capacities seeking monetary damages, he cannot do so. The Amended Complaint, to the extent it is against all of the Defendants in their official capacities (Doc. 18, p. 3, ¶ 11.), and to the extent that it seeks monetary damages, should be dismissed on the grounds that such an action is barred by the Eleventh Amendment. The Eleventh

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 88084 (M.D.Pa.)
(Cite as: Slip Copy)

Amendment applies to claims asserted in federal court under 42 U.S.C. § 1983. *Quern v. Jordan,* 440 U.S. 332, 342 (1979). It prohibits suits brought in federal court against a state or where the state or its agency is the real party in interest, and in which the relief sought has an impact directly on the state itself. *Pennhurst State Schools and Hospital v. Halderman,* 465 U.S. 89 (1984); *Allegheny County Sanitary Authority v. United States Environmental Protection Agency,* 732 F.2d 1167 (3d Cir.1984). Based on the above, the Plaintiff's Amended Complaint against the Pennsylvania Department of Corrections Defendants, to the extent it names them in their official capacities, seeking monetary relief is barred by the Eleventh Amendment and, thus, this claim is subject to dismissal.

As stated, to the extent that the Plaintiffs seek monetary damages, the Defendants are immune under the Eleventh Amendment in their official capacities. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1991); *Howlett v. Rose,* 496 U.S. 356, 365 (1990). We believe that payment of any money judgment rendered against the Defendants, who are indisputably employees working for a prison within the Pennsylvania DOC (Doc. 18, pp. 2-3), would have to be paid out of the Pennsylvania State Treasury. Further, the Pennsylvania DOC, which employs the Defendants, receives its funding from the state and does not enjoy any measure of autonomy. *See Bolden v. Southeastern Pennsylvania Transp. Auth.,* 953 F.2d 807, 818 (3d Cir.1991).

FN5. Plaintiff's request for a specific amount of monetary damages should be stricken. Since Plaintiff seeks unliquidated damages, he cannot claim a specific sum of relief. Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's request for specific monetary damages of $1 million to $3 million should be stricken from his Amended Complaint. *See Stuckey v. Ross,* Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure.

We find that Defendants Beard, Kelchner and Law should be dismissed and that Plaintiff's Fourteenth Amendment Equal Protection claim should be dismissed. We find that Defendants Southers and Whaling should be dismissed. We find that Plaintiff's claim that his due process rights were violated since he was placed in the SMU without a hearing should be dismissed. We find that Plaintiff has stated a First Amendment retaliation claim against Defendant Newton, as well as Eighth Amendment claims against Defendants Newton, Kalsky and Kahn.

With respect to the two (2) named supervisory Defendants in the Amended Complaint, *i.e.,* Superintendent Kelchner and DOC Secretary Beard, we find that Plaintiff does not sufficiently allege their personal involvement and that their alleged conduct does not amount to a constitutional violation. Plaintiff merely alleges that these supervisory Defendants refused to address his complaints that he was not getting the proper treatment, and that Kelchner denied his grievance and said that Plaintiff did not have a mental health issue. (*Id.,* ¶'s 19. & 22.-23.). Plaintiff avers that the supervisory Defendants were aware of his improper treatment, and by failing to take corrective action they violated his due process and equal protection rights.(*Id.*) We find that the stated two supervisory Defendants should be dismissed since their personal involvement is lacking in the retaliation Plaintiff alleges Defendant Newton took in taking him off of his medication. Nor does Plaintiff allege that either of the supervisory Defendants participated in any decision to place him in the SMU, or to reveal his mental health issues to other inmates in his pod. Plaintiff does not allege that these two Defendants personally deprived him medical care or that they caused him to suffer any emotional or physical problems. Further, during all relevant times, Plaintiff was being treated by the prison psychiatric medical staff, and the two supervisory Defendants, who are non-physicians, cannot be held liable for the doctors' findings that Plaintiff did not have a mental health problem requiring medication.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 88084 (M.D.Pa.)
(Cite as: Slip Copy)

## III. PLRA.

**\*5** As stated, the Plaintiff has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 8). The Prison Litigation Reform Act of 1995,[FN6] (the "Act"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[FN7]Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> FN6.Pub.L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

> FN7. The Plaintiff completed an application to proceed *in forma pauperis* and authorization to have funds deducted from his prison account. The court then issued an administrative order directing the warden to commence deduction of the full filing fee due the court from the Plaintiff's prison trust fund account.

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

In reviewing the Complaint under 28 U.S.C. § 1915(e)(2)(B), we have determined that the Plaintiff is unable to maintain his action as against Defendants Kelchner and Beard. Specifically, we find that Defendants Kelchner and Beard lack sufficient personal involvement in this case. We find that Defendant Law by denying Plaintiff's grievance is not sufficiently involved in this case. We also find no conspiracy claim is stated as to Defendant Law. We find that Plaintiff's Fifth Amendment Due Process claim with respect to his placement in the SMU should be dismissed, and that his Fourteenth Amendment Equal Protection claim should be dismissed. Further, we find that Plaintiff's claims as against all of the Defendants in their official capacities should be dismissed to the extent that he seeks money damages. We find that Defendants Southers and Whaling should be dismissed. We find that Plaintiff has stated a First Amendment retaliation claim against Defendant Newton, and Eighth Amendment claims against Defendants Newton, Kalsky and Kahn.

## IV. Motion to Dismiss Standard.

In considering whether a pleading states an actionable claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Conley v. Gibson,* 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble,* 429 U.S. 97, 107-108 (1976).

## V. Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor,* 451 U.S. 527 (1981); *Kost v. Kozakiewicz,* 1 F.3d 176, 184 (3d Cir.1993).[FN8]

> FN8.Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors.*Gonzaga Univ. v. Doe,* 536 U.S. 273, 284-85 (2002).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 7
Slip Copy, 2007 WL 88084 (M.D.Pa.)
**(Cite as: Slip Copy)**

*6 Named as Defendants are eight (8) DOC indi-viduals, seven (7) of whom are employed at SCI-Camp Hill. Since Defendants that are individually named in Plaintiff's Complaint have been stated above, we shall not reiterate their names.

It is well established that personal liability un-der section 1983 cannot be imposed upon a state of-ficial based on a theory of *respondeat superior.* *See, e.g., Rizzo v. Goode,* 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials,* 1546 F.2d 1077, 1082 (3d Cir.1976); *Parratt, supra.*It is well settled in the Third Circuit that personal in-volvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involve-ment. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.*Id.* As the Court stated in *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1998):
A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through al-legations of personal direction or of actual know-ledge and acquiescence. Allegations of participa-tion or actual knowledge and acquiescence, however, must be made with appropriate particular-ity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons.*Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208;*Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (per curiam) (a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983).

**VI. Discussion.**

*A. Defendants Beard, Kelchner and Law*

As discussed, we do not find any Constitutional

claims that the Plaintiff has asserted against the two supervisory Defendants, Beard and Kelchner, and against the medical grievance coordinator, Defend-ant Law.

These Defendants are not alleged to have per-sonally violated any of the Plaintiff's constitutional rights. Plaintiff only mentions these Defendants as failing to take corrective action to stop the abuses he alleges were committed by the other Defendants. Plaintiff does not state that Defendants Kelchner and Beard placed him in the SMU, failed to give him his medication, and denied him medical care. There are no allegations which create any personal liability as to the stated Defendants. These Defend-ants are not alleged to have participated in any viol-ations of Plaintiff's rights. Since there is insufficient personal involvement alleged on the part of these three Defendants in any constitutional violation, they should also be dismissed. *Rizzo, supra; Par-ratt, supra.*Pursuant to *Rizzo, supra,* the supervisory Defendants cannot be held liable based on *respon-deat superior* in this case. Thus, Defendants Beard, Kelchner and Law should be dismissed from this case.

*7 Moreover, a prison official's response or lack thereof to an inmate's Administrative remedies is not sufficient alone to hold the official liable in a civil rights action. The law is well-settled that there is no constitutional right to a grievance procedure. *See Jones v. North Carolina Prisoners' Labor Uni-on, Inc.* 433 U.S. 119, 137-138 (1977). This very Court has also recognized that grievance proced-ures are not constitutionally mandated. *See Chi-menti v. Kimber,* Civil No. 3:CV01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), re-versed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005) (Non-Precedential). Even if the prison provides for a grievance procedure, as the DOC does, violations of those procedures do not amount to a civil rights cause of action. *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir1988), *cert denied,*488 U.S. 898 (1988); *Hoover v. Watson,* 886 F.Supp. 410, 418 (D.Del.1995), aff'd74 F.3d 1226 (3d Cir.1995).*See also Burnside v. Moser,* Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 88084 (M.D.Pa.)
(Cite as: Slip Copy)

(Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra.*

As the Court stated in *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (per curiam) a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983. Permitting supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement. *Rizzo, supra.* Allowing only a letter sent to an official to be sufficient to impose supervisory liability would permit an inmate to subject defendants to potential liability in any case in which the prisoner merely transmitted correspondence to the official. *Id.* Thus, several courts have held that "it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."*Greenwaldt v. Coughlin,* 1995 WL 232736, at *4 (S.D.N.Y.Apr.19, 1995) (citations omitted); *accord Rivera v. Goord,* 119 F.Supp.2d 327, 344 (S.D.N.Y.2000) (allegations that inmate wrote to prison officials and was ignored insufficient to hold those officials liable under section 1983); *Woods v. Goord,* 1998 WL 740782, at *6 (S.D.N.Y. Oct. 23, 1998) ("Receiving letters or complaints ... does not render [prison officials] personally liable under § 1983."); *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.") (citations omitted). The Second Circuit Court has stated that "if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability."*Walker v. Pataro,* 2002

WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002).

*8 Nor has Plaintiff stated a First Amendment retaliation claim against Defendants Beard, Kelchner and Law. Plaintiff only alleges that Defendant Dr. Newton retaliated against him by taking him off of his medication due to his grievance about being placed in the SMU which is not suitable for a mentally disabled person. In *Rauser v.. Horn,* 241 F.3d 330, 333 (3d Cir.2001), the Court stated that "a prisoner litigating a retaliation claim must show that he suffered some 'adverse action' at the hands of the prison officials."To establish a retaliation claim, the Plaintiff must also show that there exists a causal nexus between the Plaintiff's constitutionally protected conduct and the adverse action. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). We find that this nexus does not exist with respect to our two supervisory Defendants and with respect to Defendant Law.

Plaintiff alleges that Defendant Law somehow conspired with the prison mental health department to deny him mental health treatment. (*Id.,* p. 4, ¶ 18.).[FN9] Plaintiff fails to state a conspiracy claim against Defendant Law.

> FN9. Since we again recommend that Plaintiff's Eighth Amendment improper medical care claim against Defendants Newton, Kahn and Kalsky proceed, we shall not detail Plaintiff's allegations in his Amended Complaint against them.

The Third Circuit in *Jones v. Maher,* Appeal No. 04-3993 (3d Cir.2005), slip op. p. 5, stated that broad and conclusory allegations in a conspiracy claim are insufficient to state a viable claim. (Citation omitted). Also, the United States District Court for the Middle District of Pennsylvania, in *Flanagan v. Shively,* 783 F.Supp. 922, 928-29 (M.D.Pa.1992), aff'd. 980 F.2d 722 (3d Cir.1992), *cert. denied* 510 U.S. 829 (1993), stated as follows:

Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 88084 (M.D.Pa.)
(Cite as: Slip Copy)

consultation, cooperation, or command from which such an agreement can be inferred. In *Waller v. Butkovich,* 584 F.Supp. 909, 931 (D.C.N.C.1984), the district court outlined the pleading requirements in a conspiracy action.

In most cases, a bare conclusory allegation of 'conspiracy' or 'concerted action' will not suffice. The plaintiffs must expressly allege an agreement or make averments of 'communication, consultation, cooperation, or command' from which such an agreement can be inferred ...

(Citation omitted.) ...Allegations that the defendants' actions combined to injure the plaintiffs are not a sufficient basis from which to imply a conspiracy ... (Citation omitted.)

Additionally, the plaintiffs must make 'specific factual allegations connecting the defendant to the injury'... (Citations omitted.) ...

The Plaintiff fails to state a conspiracy claim against Defendant Law, in that he does not allege an agreement between her and the remaining psychiatrist and psychologist Defendants to deliberately treat his mental health ailments improperly. There is no allegation that Defendant Law played any role in the decision to remove Plaintiff from his medication or to treat his mental health problems improperly. We find that Plaintiff's bare conclusory allegations of conspiracy against Defendant Law are inadequate to allege a conspiracy claim. *See Flanagan, supra.*

*9 Further, since the Plaintiff was being treated by the prison medical staff, Dr. Newton, Dr. Kahn and Psychologist Kalsky, Defendants Beard, Kelchner and Law, non-physicians, cannot be held liable under *Durmer v. O'Carroll,* 991 F.2d. 64, 69 (3d Cir.1993).

Specifically, Plaintiff alleges that Defendants psychiatrist and psychologist violated his Eighth Amendment rights by not properly treating his mental health problems and by taking him off of his medication. Plaintiff indicates that he disputes the Defendant doctors' finding that he did not have a mental health problem requiring medication. The Plaintiff has failed to state a viable claim against

Defendants Beard, Kelchner and Law, since they were not physicians, and he was receiving his medical treatment from the prison psychiatrists and psychologist, even though he disagreed with the treatment rendered and felt that his mental health problems were not being adequately treated.

Any claim that Defendants Beard, Kelchner and Law were deliberately indifferent to the Plaintiff's serious medical needs must fail. The stated Defendants, non-physicians, cannot be found deliberately indifferent to the Plaintiff's serious medical needs, as the Plaintiff acknowledges that he was under the care of the mental health doctors. *Durmer,* 991 F.2d. at 69 (3d. Cir.1993). The decisions how to treat Plaintiff and with what medication were made by the treating Defendant doctors. We recognize that in the case of *Devern v. SCI-Graterford,* 2004 WL 1552000 * 1 (E.D.Pa.), the Court limited *Durmer* and held that a "non-physician supervisor may be liable under § 1983 if he had knowledge or reason to know of medical mistreatment."In our case, the Plaintiff does not assert that Defendants Beard, Kelchner and Law were involved with the decisions how to treat Plaintiff and with what medication. Nor is it alleged that these Defendants knew that Plaintiff's treatment by the medical staff was improper or inadequate. Further, it is not alleged that these Defendants knew that the finding of the medical staff that Plaintiff did not have a mental health problem was improper or rendered to deny him medication.

Plaintiff attempts to make the stated Defendant responsible for the conduct of the treating doctors whom he admits was providing him with care. Liability in a § 1983 case may only be based on the Defendant's personal involvement in conduct amounting to a constitutional violation. *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077 (3d Cir.1976); *Rizzo v. Goode,* 423 U .S. 362 (1976). There is no claim that Defendants Beard, Kelchner and Law had any direct involvement in Plaintiff's denial of medical treatment claim or that they had knowledge of any medical mistreatment. As stated, all of the actions taken with respect to Plaintiff's mental health care were performed by the Defend-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 88084 (M.D.Pa.)
**(Cite as: Slip Copy)**

ant doctors. Beard, Kelchner and Law are not alleged to have been involved in prescribing Plaintiff any medication or in taking him off of it. Nor are they alleged to have played any role in diagnosing Plaintiff with a mental disorder and later finding that he did not have one. Plaintiff cannot hold the non-physician Defendants liable on the basis of *respondeat superior,* as he tries to do in this case. *Id.*

**\*10** Our conclusion is supported by this very Court's decision in *Chimenti v. Kimber,* Civil No. 01-0273 (M.D.Pa.2002), aff'd. in part Third Circuit Appeal No. 03-2056 (6-8-05). In *Chimenti,* as in this case, the Plaintiff was under the care of the prison's medical staff and the Commonwealth Defendants were not physicians, nor were they involved in his care. The Court held that under *Durmer,* there was no basis for an Eighth Amendment claim against any of the Commonwealth Defendants. *Id.* at pp. 17-18.

### B. Defendants Southers and Whaling

Plaintiff alleges that Defendant Southers, as unit manager of the SMU, was responsible for the welfare of inmates in the SMU, and that Defendant Whaling, as the SMU counselor, was to make sure the inmates in the SMU received proper counseling. (Doc. 18, p. 3, ¶ 's 7.-8.). Plaintiff vaguely alleges that these Defendants mistreated him by not making sure he received the proper treatment and counseling in the SMU. Based on the above discussion, insofar as Plaintiff was being treated by the prison medical staff for his mental health problems, we find that there is no Eighth Amendment claim stated as against Defendants Southers and Whaling under *Durmer.*[FN10]

> FN10. Indeed, Plaintiff's claim against Defendants Southers and Whaling is contingent on his claim that the Defendant doctors misdiagnosed him as not having a mental health problem and as not requiring medication.

### C. Due Process Claim

Further, to the extent that Plaintiff claims that Defendants Beard, Kelchner, Southers and Whaling violated his due process rights by not giving him a hearing prior to placing him in the SMU upon his transfer to SCI-Camp Hill, we find that this Court has repeatedly found no liberty interest with respect to such claims. (Doc. 18, p. 5, ¶ 28.).

We conclude that, based on this Court's recent cases, including *Francis v. Dodrill,* 2005 WL 2216582 (M.D.Pa.) and *Stotts v. Dodrill,* Civil No. 04-0043 (M.D.Pa.), Petitioner's placement in the SMU does not implicate his due process rights. Therefore, we shall recommend that this claim be dismissed as against Defendants Beard, Kelchner, Southers and Whaling.

Plaintiff states that he is challenging his placement in the Special Management Unit at SCI-Camp Hill. Plaintiff claims that the SMU is not suitable for an inmate such as he, i.e., "a mentally disabled person." (Doc. 18, p. 3, ¶ 13.). Plaintiff states that on January 13, 2006, he was supposed to go to the SNU and not the SMU due to his mental health issues. However, Plaintiff states that he was placed in the SMU, which is a control unit and not suitable for him. Plaintiff alleges that the stated Defendants violated his due process rights by placing him in the SMU without first being given a hearing. (Doc. 18, pp. 5-6, ¶ 28.). This Court has consistently held that placement in the Special Management Unit does not give rise to atypical and significant hardships and does not implicate due process of law.

Thus, Plaintiff claims that he has been made to suffer atypical hardship without due process due to his immediate placement in the SMU upon his transfer to SCI-Camp Hill in January 2006, since he was deprived of his liberty in the SMU without a hearing. (*Id.*). Plaintiff seems to claim that the procedural safeguards of *Wolff v. McDonnell,* 418 U.S. 539 (1974), were not followed in his case. (*Id.*). Plaintiff seems to claim that his placement in the SMU constitutes an atypical and significant hardship and implicates his due process rights. (*Id.*).

**\*11** We find that this Court, in the stated cases,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 88084 (M.D.Pa.)
(Cite as: Slip Copy)

has considered similar claims and has found that an inmate's placement in the SMU does not implicate his due process rights. *See Franics, supra* at * 3.

Based on this Court's decisions in *Francis v. Dodrill,* 2005 WL 2216582 (M.D.Pa.), and *Stotts v. Dodrill,* Civ. No. 04-0043, M .D. Pa.,[FN11] we find that our Plaintiff's placement in the SMU does not implicate his due process rights. As this Court in *Francis* stated:

> FN11. In *Stotts,* this Court found that federal inmates' placement in the SMU following a riot incident did not violate their due process rights, that inmates' placement in the SMU was not punitive in nature, and that inmates were not entitled to the procedural safeguards.

The defendants also argue that Francis' placement in the SMU does not implicate his due process rights. We agree. A due process liberty interest "in avoiding particular conditions of confinement may arise from state policies or regulations."*Wilkinson v. Austin,* 545 U.S. 209, ----, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005). The Due Process Clause protects a prisoner's right to "freedom from restraint, which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship in relation to the ordinary incidents of prison life."*Id.* at 2394 (quoting *Sandin v. Connor,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

The proper focus for determining whether prison conditions give rise to a due process liberty interest is the nature of the conditions, not mandatory language in prison regulations. *Sandin,* 515 U.S. at 484. In *Sandin,* an inmate was charged with violating prison regulations. *Id.* at 475.At a hearing, the hearing committee refused the inmate's request to present witnesses. *Id.* The committee found the inmate guilty and sentenced him to disciplinary segregation. *Id.* The inmate sought review, and a deputy administrator found some of the charges unfounded and expunged his disciplinary record. *Id.* at

476.Thereafter, the inmate filed suit pursuant to 42 U.S.C. § 1983 for a deprivation of procedural due process during the disciplinary hearing. *Id.* The Tenth Circuit found that he had a protected liberty interest because it interpreted the prison regulations to require that the committee find substantial evidence of misconduct before imposing segregation. *Id.* at 477.The Supreme Court reversed, finding no liberty interest. *Id.* at 484.In doing so, it rejected an approach that focused on whether the prison regulations "went beyond issuing mere procedural guidelines and has used 'language of an unmistakably mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates." ' *Id.* at 480 (quoting *Hewitt v. Helms,* 459 U.S. 460, 471-72, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). The Court found this approach undesirable because it created a disincentive for prison administrators to codify prison management procedures and because it "led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Id.* at 482.Thus, the Court held liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.In applying this test, the Court observed, "[discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485.The Court then found that the inmate's disciplinary segregation "did not present a dramatic departure from the basic conditions of Conner's indeterminate sentence" because the conditions of disciplinary segregation were similar to those faced in administrative and protective custody. *Id.* at 486.

*\*12* In *Wilkinson v. Austin,* 545 U.S. 209, ----, 125 S.Ct. 2384, 2393,

162 L.Ed.2d 174 (2005), the Court applied the *Sandin* test and found that the plaintiff's due process rights were implicated when he was placed in a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 88084 (M.D.Pa.)
(Cite as: Slip Copy)

Page 12

program where:

almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room ... [P]lacement ... is indefinite and, after an initial 30 day review, is reviewed just annually.... [P]lacement disqualifies an otherwise eligible inmate for parole consideration.

*Id.* at 2394-95.

The court found that these harsh conditions "give rise to a liberty interest in their avoidance."

*Id.* at 2395.

*Fraise v. Terhune,* 283 F.2d 506 (3d Cir.2002) applied the Sandin test and found that avoiding placement in the Security Threat Group Management Unit (STGMU) in the New Jersey prison system is not a protected liberty interest. Inmates who the prison deemed members of groups that posed a security threat were placed in the STGMU. *Id.* at 509."An inmate assigned to the STGMU remains in maximum custody until the inmate successfully completes a three-phase behavior modification program."*Id.* at 511.The Court found that despite the additional restrictions, prisoners have no liberty interest in avoiding placement in the STGMU. *Id.; see also Griffin v. Vaughn,* 112 F.3d 703, 706 (3d Cir.1997) (finding that additional restrictions in administrative custody for a period of fifteen months does not deprive prisoners of protected liberty interests).

We find that the conditions in the [USP-Lewisburg] SMU do not remotely approach the severity of the conditions *Wilkinson* found to give rise to a protected liberty interest, and are comparable to the conditions in cases such as *Sandin, Fraise,* and *Griffin,* which found no protected liberty interest.

*Id.,* pp. *3-*4.

The *Francis* Court concluded that the restrictions in the SMU in federal prison were no greater than the restrictions placed on the inmate in *Griffin. Id.* * 5. In our case, Plaintiff does not allege any greater restrictions in the SMU at SCI-Camp Hill than were placed on the inmates in *Francis.*

The *Francis* Court then stated:

Inmates have no due process right to a facility of their choosing. *Young v. Quinlan,* 960 F.2d 351, 358 n. 16 (3d Cir.1992). The Bureau of Prisons retains sole discretion over where to place an inmate. 18 U.S.C. § 3621. Inmates do, however, have a liberty interest in avoiding transfer to facilities where the conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."*Sandin,* 515 U.S. at 484. This is not such a transfer. We find that these conditions and the conditions overall in the SMU are reasonable and proportionate to those in other prisons in the federal system and across the country and do not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. Using restrictions to promote prosocial behavior falls within the parameters of a sentence imposed by a court of law. While Francis clearly would prefer not to be housed in the SMU, his preference is not a liberty interest protected by the Due Process Clause.

*13 Id.*

Further, the Court in *Griffin v. Vaughn,* 112 F.3d 703, 706 (3d Cir.1997), stated:

Applying the precepts of *Sandin* to the circumstances before us, we conclude that the conditions experienced by Griffin in administrative custody did not impose on him "atypical and significant hardship," that he was thus deprived of no state created liberty interest, and that his failure to give him a hearing prior to his transfer to administrative custody was not a violation of the procedural due process guaranteed by the United States Constitution.

The *Griffin* Court concluded that, considering the reasons to transfer inmates from general population to administrative custody, such as inmates deemed to be security risks, stays in administrative custody for many months (*i.e.* as long as 15 months) are not uncommon. *Id.* at p. 708.Thus, the *Griffin* Court held that the inmate Griffin's transfer to and confinement in administrative custody "did not deprive him of a liberty interest, and that he was not entitled to procedural due process protec-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 88084 (M.D.Pa.)
**(Cite as: Slip Copy)**

tion."*Id.*

Moreover, this Court in *Francis, supra at* * 2, stated that "A violation of the Due Process Clause involves the following three elements: '1) the claimant must be 'deprived of a protectable interest; 2) that deprivation must be due to some governmental action; and 3) the deprivation must be without due process.' " (citation omitted). The *Francis* Court, as stated, found that placement of its Plaintiff, a federal inmate at USP-Lewisburg, in the SMU did not implicate his due process rights. *Id.* * 3. Based on *Griffin* and *Francis,* our Plaintiff's placement in the SMU for eight (8) months does not give rise to a protected liberty interest.

### D. Fourteenth Amendment Equal Protection Claim

Plaintiff asserts that his Fourteenth Amendment right to equal protection was violated by Defendants since he was not being given the proper treatment due to his mental disability. (Doc. 18, pp. 5-6). Plaintiff avers that Defendants treated him differently than similarly situated inmates who did not have mental health problems. We find that the § 1983 Equal Protection claims should be dismissed because the Plaintiff has failed to allege that Defendants purposely discriminated against him on the basis of his race, gender, or nationality. There is no claim that Defendants were motivated by a discriminatory intent with respect to Plaintiff's allegations. In fact, Plaintiff alleges that he was taken off of his medication at the outset by Defendant Dr. Newton because this Defendant was retaliating against Plaintiff for his complaint that the prison staff should not have placed him the SMU since it was not suitable for him. (Doc. 18, ¶ 's 13.-14). Plaintiff clearly did not claim a discriminatory motive for Dr. Newton's alleged conduct. Additionally, we do not find that Plaintiff has properly stated that he and any other inmates were similarly situated for purposes of an equal protection claim.

**\*14** The elements of a § 1983 Equal Protection claim require Plaintiff to state Defendants intended to discriminate against him, and later to prove this

by either direct or circumstantial evidence. *See Pa. v. Flaherty,* 983 F.2d 1267 (3d Cir.1993) (Intent is a *prima facie* element of a § 1983 equal protection claim of discrimination) (citing *Washington v. Davis,* 426 U.S. 229 (1976).*See also Williams v. Pa. State Police,* 108 F.Supp.2d 460, 471 (E.D.Pa.2000) ("to prevail on a § 1983 claim, a plaintiff must prove that the Defendant intended to discriminate") (citation omitted).

The Equal Protection Clause does not require that all persons be treated alike, but instead, a plaintiff must show that the differential treatment to those similarly situated was unreasonable, or involved a fundamental interest or individual discrimination. *Tigner v. Texas,* 310 U.S. 141, 147 (1940); *Price v. Cohen,* 715 F.2d 87, 91 (3d Cir.1983), *cert. denied,*465 U.S. 1032 (1984). It is well-settled that a litigant, in order to establish a viable equal protection claim, must show an intentional or purposeful discrimination.*Snowden v. Hughes,* 321 U.S. 1, 8 (1944); *Wilson v. Schillinger,* 761 F.2d 921, 929 (3d Cir.1985), *cert. denied,*475 U.S. 1096 (1986); *E & T Realty v. Strickland,* 830 F.2d 1107, 1113-14 (11th Cir.1987), *cert. denied*485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights, and (3) classifications based on social or economic factors. *See, e.g., Britton v. City of Erie,* 933 F.Supp. 1261, 1266 (W.D.Pa.1995), *aff'd,*100 F.3d 946 (3d Cir.1996); *Adams v. McAllister,* 798 F.Supp. 242, 245 (M.D.Pa.), *aff'd.*972 F.2d 1330 (3d Cir.1992).

As the Court in *Barnes Foundation v. Township of Lower Merion,* 942 F.Supp. 970, 983 (E.D.Pa.1997), stated:
The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."U.S. Const. Amend. XIV, § 1. The Equal Protection Clause announces the "fundamental principle" that "the State must govern impartially," *New York City Transit Auth. v. Beazer,* 440 U.S. 568, 587, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 88084 (M.D.Pa.)
(Cite as: Slip Copy)

Page 14

(1979), and "is essentially a direction that all persons similarly situated should be treated alike."*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

Plaintiff has failed to allege any facts from which it can be concluded that our Defendants engaged in intentional or purposeful discrimination or that he was treated differently by Defendants than similarly situated persons on the basis of his race, nationality or gender. In short, Plaintiff does not allege any discrimination with respect to his placement in the SMU or with respect to his treatment he received there. There is no cognizable equal protection claim stated. Plaintiff has failed to allege any facts from which it can be concluded that Defendants engaged in intentional or purposeful discrimination or that he was treated differently than similarly situated individuals on the basis of his race, religion, gender, alienage, or national origin.

**\*15** Additionally, the Plaintiff has not stated any specific acts taken by Defendants to show any discriminatory animus attributable to the stated Defendants. Thus, we shall recommend that Plaintiff's Fourteenth Amendment claims as against all Defendants be dismissed.

### F. Defendants Newton, Khan and Kalsky

We find that Plaintiff has stated a First Amendment retaliation claim against Defendant Dr. Newton, and that he has stated Eighth Amendment claims against Defendants Newton, Khan and Kalsky.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."*Farmer v. Brennan*, 511 U.S. 825 (1994)*citing Helling v. McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991); *Estelle v. Gamble*, 429 U.S. 97 (1976). An inadequate medical care claim, as we have here, requires allegations that the prison official acted with "deliberate indifference to serious medical needs" of the plaintiff, while a prisoner. *Estelle*, 429 U.S. at 104 (1976); *Unterberg v. Correctional Medical*

*Systems, Inc.*, 799 F.Supp. 490, 494-95 (E.D.Pa.1992). The official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."*Id.*"The question ... is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.' " *Farmer*, 511 U.S. at 843.

In order to state a viable Eighth Amendment claim, a prisoner must demonstrate that the Defendant was deliberately indifferent to his medical needs and that those needs were serious. *Estelle*, 429 U.S. at 106.

Mere disagreement as to the proper medical treatment does not support a claim of an Eighth Amendment violation. *Monmouth County Correctional Institution Inmates v. Lensaro*, 834 F.2d 326 (3d Cir.1987), *cert. denied,*486 U.S. 1006 (1988); *see also Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir.1993) ('[T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation."). As such, "[a] distinction must be made between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment."*Nottingham v. Peoria*, 709 F.Supp. 542, 547 (M.D.Pa.1988)*citing United States ex. rel. Walker v. Fayette County*, 549 F.2d 573, 575 n. 2 (3d Cir.1979).[FN12]

> FN12. We note that, to an extent, our Plaintiff disputes the Defendant doctors' finding that he did not have a mental health issue despite being diagnosed at his previous prison before his transfer to SCI-Camp Hill that he had a mental health diagnosis, *i .e.* anti-social personality disorder, and required medication. (Doc. 18, p. 4). Insofar as Plaintiff disputes the doctors' diagnosis of his mental condition and the doctors' medical decision that he did

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 88084 (M.D.Pa.)
(Cite as: Slip Copy)

not require medication, this is not an actionable Eighth Amendment claim.

In the case of *Monmouth County Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987), the court addressed whether the Plaintiff's alleged injuries rose to the level of being sufficiently serious for the purpose of establishing an Eighth Amendment violation. The *Monmouth County* case stated that:

**\*16** "A medical need is 'serious,' in satisfaction of the second prong of the *Estelle* test, if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."*Pace v. Fauver,* 479 F.Supp. 456, 458 (D.N.J.1979), *aff'd,*649 F.2d 860 (3d Cir.1981); *accord Laaman v. Helgemoe,* 437 F.Supp. 269, 311 (D.N.H.1977). The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment. For instance, *Estelle* makes clear that if 'unnecessary and wanton infliction of pain,'429 U.S. at 103, 97 S.Ct. at 290, results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment. *See Id,* at 105, 97 S.Ct. at 291. In addition, where denial or delay causes an inmate to suffer a lifelong handicap or permanent loss, the medical need is considered serious. (*Citations omitted* )."

*Monmouth County,* 834 F.2d at 347(3d Cir.1987).

We find that Plaintiff has met the first hurdle of *Estelle, i.e .,* Defendants were deliberately indifferent to his medical needs, as he alleges that Defendants Newton, Kahn and Kalsky denied him required medical care and that they placed him in jeopardy amongst his fellow inmates by disclosing his mental health condition to them.

In *Monmouth, supra,* 834, F.2d at 347, the Court said that a medical need is serious if the delay or denial of health care results in "wanton infliction of pain, lifelong handicap or permanent

loss."Here Plaintiff alleges sufficient physical and emotional suffering, and he claims that it was as a result of any of our Defendants' non-treatment. Taking all of the allegations of Plaintiff as true, as we must at this juncture, he states legally sufficient Eighth Amendment claims against Defendants Newton, Kahn and Kalsky in this case. Thus, we shall recommend that this case proceed with respect to these three Defendants since the Plaintiff has alleged deliberate indifference to his serious medical condition under the Eighth Amendment as against them. Therefore, we shall recommend that Plaintiff's Eighth Amendment claims against Defendants Newton, Kahn and Kalsky proceed.

**V. Recommendation.**

Based on the foregoing, it is respectfully recommended that Plaintiff's action as against Defendants Kelchner, Beard and Law be dismissed. Specifically, we find that Defendants Kelchner and Beard lack sufficient personal involvement in this case. We find that Defendant Law, by denying Plaintiff's grievance, is not sufficiently involved in this case. We also find no conspiracy claim is stated as to Defendant Law. We find that Plaintiff's Fifth Amendment Due Process claim with respect to his placement in the SMU should be dismissed, and that his Fourteenth Amendment Equal Protection claim as against all Defendants should be dismissed. Further, we find that Plaintiff's claims as against the Defendants in their official capacities should be dismissed to the extent that he seeks money damages. We find that Defendants Southers and Whaling should be dismissed. We find that Plaintiff has stated a First Amendment retaliation claim against Defendant Newton, and that he has stated Eighth Amendment claims against Defendants Newton, Kalsky and Kahn. Finally, it is recommended that this case be remanded to the undersigned for further proceedings.

*NOTICE*

**\*17 NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Recommendation dated September 7, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

M.D.Pa.,2007.
Spencer v. Kelchner
Slip Copy, 2007 WL 88084 (M.D.Pa.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AARON K. CARTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    C.A. No. 06-561-SLR |
| | ) |
| COMMISSIONER STANLEY TAYLOR, | ) |
| WARDEN THOMAS CARROLL, DR. | ) |
| TAMMY Y. KASTRE, LINDA HUNTER, | ) |
| CORRECTIONAL MEDICAL SYSTEMS | ) |
| S/LT. ALISA[1] PROFACI, LT. PETER | ) |
| FORBES, | ) |
| Defendants. | ) |

## AFFIDAVIT OF ALISA PROFACI

I, Alisa Profaci, having been duly sworn according to the law, do hereby depose and state the following:

1.    I am employed by the State of Delaware, Department of Correction at the Delaware Correctional Center ("DCC"), in Smyrna, Delaware as a Staff Lieutenant.

2.    I have reviewed the Complaint of Aaron Carter and dispute the allegations therein.

3.    Prior to 2005, I was a Lieutenant in the Maximum Housing Unit ("MHU") on the 4:00 p.m. – 12:00 a.m. shift. In 2005, I was promoted to Staff Lieutenant and returned to MHU as the Unit Manager. In my current position, I supervise approximately six supervisors, sixty line staff, and up to 588 inmates.

4.    I have no knowledge as to the medical treatment of the plaintiff. Correctional officers are not generally aware of an inmates' medical treatment or medical conditions.

5.    I also do not recall any specific Complaints from the plaintiff. It is my typical practice to tell the inmate to write me a note or letter with their concern so that I can remember to look

---

[1] Improperly named as "Alisha" in the Complaint.

into it.  If I receive a letter, I research or have the shift lieutenant investigate the issue and respond back, or have it corrected if it is something that I can do.  I also receive grievances from my supervisor and resolve or have them resolved by the shift lieutenant if possible.  These do not include medical grievances.  In my current position I oversee approximately 588 inmates and I often receive complaints.  I do not have any specific recollection of any complaints from the plaintiff.

6.      Correctional officers do not receive any formal medical training.  Officers receive only basic first aid training and a first aid refresher course every year.

7.      I have made these statements based upon my personal knowledge, specialized training, and experience as an employee of the Department of Correction.

Staff Lieutenant Alisa Profaci

SWORN TO AND SUBSCRIBED BEFORE ME THIS ___5___ DAY OF February, 2008.

NOTARY

2

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AARON K. CARTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    C.A. No. 06-561-SLR |
| | ) |
| COMMISSIONER STANLEY TAYLOR, | ) |
| WARDEN THOMAS CARROLL, DR. | ) |
| TAMMY Y. KASTRE, LINDA HUNTER, | ) |
| CORRECTIONAL MEDICAL SYSTEMS | ) |
| S/LT. ALISA[1] PROFACI, LT. PETER | ) |
| FORBES, | ) |
| Defendants. | ) |

### AFFIDAVIT OF PETER FORBES

I, Peter Forbes, having been duly sworn according to the law, do hereby depose and state the following:

1.    I am employed by the State of Delaware, Department of Correction at the Delaware Correctional Center ("DCC"), in Smyrna, Delaware as a Lieutenant.

2.    I have reviewed the Complaint of Aaron Carter and dispute the allegations therein.

3.    From January of 2003 to December of 2004, I was a relief Lieutenant for the Maximum Housing Unit ("MHU") and the Secured Housing Unit ("SHU").    From December of 2004 to April of 2006, I worked on the MHU.    From April of 2006 to present, I worked on the SHU.

4.    I have no knowledge as to the medical treatment of the plaintiff.    Correctional officers are not generally aware of an inmates' medical treatment or medical conditions.

5.    I also do not recall any specific complaints from the plaintiff.    I often receive

---

[1] Improperly named as "Alisha" in the Complaint.

complaints from inmates and, without further information, I can not recall whether this inmate complained to me, what he might have complained about, or how it may have been addressed or resolved.

6.      As a correctional officer, I have received training in basic first aid, but I have no medical training beyond basic first aid.

7.      I have made these statements based upon my personal knowledge, specialized training, and experience as an employee of the Department of Correction.


Lieutenant Peter Forbes


SWORN TO AND SUBSCRIBED BEFORE ME THIS __5__ DAY OF _February_, 2008.


NOTARY

# EXHIBIT E

Date: 06/30/2005

**Delaware Correctional Center**
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE REPORT

### OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| Offender Name : CARTER, AARON K | SBI# : 00179415 | Institution : DCC | |
| Grievance # : 13805 | Grievance Date : 04/28/2005 | Category : Individual | |
| Status : Resolved | Resolution Status : Level 1 | Resol. Date : 06/30/2005 | |
| Grievance Type: Health Issue (Medical) | Incident Date : 04/20/2005 | Incident Time : | |
| IGC : Merson, Lise M | Housing Location : Bldg 21, Lower, Tier B, Cell 9, Top | | |

### OFFENDER GRIEVANCE DETAILS

Description of Complaint: On 4-20-05 Dr. Niaz informed me that I was resistant to all medications but four and that he was putting me on all four meds. I disagreed with being placed on the four meds because it left me nothing to fall back on in case I became resistant. Dr. Niaz has never provided me my CD4 count or results from Genotyping test. On 4-21-05 I received one 600 mg sustiva and on 4-22-05 for morning meds I received two Generase and two other protease inhibitor pills. from my knowledge protease inhibitors should be taken two or more times daily and more then two pills each time. I request a second opinion.

Remedy Requested : To stop being forced to see Dr. Niaz and immediately see another Dr. for second opinion. I'll continue to refuse taking these meds, I truly believe such small dosages will cause me to become resistant leaving me no other options but death, Dr. Niaz stated that I have no other medications available to me.

### INDIVIDUALS INVOLVED

| Type | SBI# | Name |
|---|---|---|

## Inmate Copy

### ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| Medical Grievance : YES | Date Received by Medical Unit : 05/12/2005 |
| Investigation Sent : 05/12/2005 | Investigation Sent To : Wolken, Gina |
| Grievance Amount : | |

Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

# INFORMAL RESOLUTION

| OFFENDER GRIEVANCE INFORMATION | | |
|---|---|---|
| **Offender Name :** CARTER, AARON K | **SBI#** : 00179415 | **Institution** : DCC |
| **Grievance #** : 13805 | **Grievance Date** : 04/28/2005 | **Category** : Individual |
| **Status** : Resolved | **Resolution Status:** Level 1 | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 04/20/2005 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :**Bldg 21, Lower, Tier B, Cell 9, Top | |

| INFORMAL RESOLUTION | |
|---|---|
| **Investigator Name** : Wolken, Gina | **Date of Report** 05/12/2005 |
| **Investigation Report :** Issue Resolved | |
| **Reason for Referring:** | |

**Offender's Signature:**_____

**Date**                   :_____

**Witness (Officer)**      :_____

Case 1:06-cv-00561-SLR Document 51-2 Filed 01/28/2008 Page 12 of 06/30/2005

Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE INFORMATION - IGC

### OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name** : CARTER, AARON K | **SBI#** : 00179415 | **Institution** : DCC |
| **Grievance #** : 13805 | **Grievance Date** : 04/28/2005 | **Category** : Individual |
| **Status** : Resolved | **Resolution Status** : Level 1 | **Inmate Status** : |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 04/20/2005 | **Incident Time** : |
| **IGC** : Merson, Lise M | **Housing Location** : Bldg 21, Lower, Tier B, Cell 9, Top |

### IGC

**Medical Provider:**                    **Date Assigned**

**Comments:**

☐ **Forward to MGC**              ☐ **Warden Notified**

☐ **Forward to RGC**              **Date Forwarded to RGC/MGC** : 06/30/2005

☒ **Offender Signature Captured**       **Date Offender Signed** : 06/30/2005

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AARON K. CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-561-SLR |
| | ) | |
| COMMISSIONER STANLEY TAYLOR, | ) | JURY TRIAL DEMANDED |
| WARDEN THOMAS CARROLL, DR. | ) | |
| TAMMY Y. KASTRE, LINDA HUNTER, | ) | |
| CORRECTIONAL MEDICAL SYSTEMS | ) | |
| S/LT. ALISA[1] PROFACI, LT. PETER | ) | |
| FORBES, | ) | |
| Defendants. | ) | |

**STATE DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37 OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

COME NOW, State Defendants Warden Thomas Carroll, Staff Lieutenant Alisa Profaci, and Lieutenant Peter Forbes ("State Defendants") by and through their undersigned counsel, and hereby moves this Honorable Court (the "Motion") to enter an order, substantially in the form attached hereto, dismissing the above-captioned matter in accordance with Rule 37 of the Federal Rules of Civil Procedure (the "Federal Rules"), for the plaintiff's failure to participate in discovery. In the alternative, the State Defendants move this Honorable Court to grant summary judgment in their favor pursuant to Federal Rule 56. In support of the Motion, the State Defendants state as follows:

1.    The plaintiff Aaron K. Carter ("Plaintiff" or "Carter") is an inmate incarcerated at the Delaware Correctional Center ("DCC") of the Delaware Department of Correction ("DOC"). Carter initiated this action pursuant to 42 U.S.C. § 1983 by

---

[1] Improperly named as "Alisha" in the Complaint.

filing a Complaint on September 11, 2006 alleging violations of his Eighth Amendment rights and the Americans with Disabilities Act ("ADA") and naming as defendants: Stanley Taylor, Thomas Carroll, Lt. Peter Forbes, St. Lt. Alisha Profaci ("State Defendants"), Correctional Medical Services ("CMS"), Tammy Kastre, and Linda Hunter. (D.I. 2. The plaintiff appears *pro se* in this matter with leave to proceed *in forma pauperis*. (D.I. 4).

2.    The Court issued a service Order on December 19, 2006, dismissing Linda Hunter and allowing service to proceed against the remaining defendants. (D.I. 6). Thereafter, service was executed as to all defendants except for Stan Taylor. Defendant Taylor has not been served in this action. (D.I. 8, 50). The state defendants answered the Complaint on May 14, 2007 asserting various affirmative defenses, including lack of personal involvement, official and qualified immunities, and failure to state a claim pursuant to § 1983. (D.I. 13). CMS filed a Motion to Dismiss. (D.I. 14). A default was issued against Defendant Kastre (D.I. 28), but Defendant Kastre later answered the complaint on December 19, 2006. (D.I. 44).

3.    The Court entered a Scheduling Order on August 7, 2007. (D.I. 24). On October 2, 2007, the state defendants propounded Interrogatories and Requests for Production on the plaintiff. (D.I. 32, 33). To date, the plaintiff has not responded to the Interrogatory request. The plaintiff sent responses to the Requests for Production on January 29, 2008; nearly four months after the requests were filed and one week before the dispositive motion deadline. (D.I. 51).

4.    The Court granted the state defendants' motion to enlarge the discovery and dispositive motion deadlines on December 3, 2007. The state defendants and CMS

filed Motions for Leave to Depose the plaintiff which were granted by the Court on November 2, 2007. (D.I. 38). On January 7, 2008, CMS noticed the deposition of the plaintiff. (D.I. 47).

5.      Counsel for CMS and undersigned counsel appeared with the court reporter at DCC to depose the plaintiff on January 11, 2008. As documented in the attached deposition transcript, the plaintiff refused to testify at the deposition. (Exhibit "A" – Carter Dep.). Counsel for the state defendants informed the plaintiff that his testimony was necessary for discovery in this case, and that if he refused to testify, counsel would file a Motion to Dismiss the action. The plaintiff still refused to testify.

6.      Carter's refusal to comply with discovery has stripped the state defendants of the ability to gather all pertinent facts and information needed to properly defend against the allegations in the plaintiff's Complaint. Therefore, dismissal of the case is appropriate under Federal Rule 37. In the alternative, based on the record, the state defendants are entitled to summary judgment as they had no personal involvement in the allegations in the Complaint, cannot be held liable solely on the basis of his supervisory responsibility, and were not deliberately indifferent to the plaintiff's medical needs.

## I.      Dismissal under Rule 37(d) is appropriate because Carter has willfully and knowingly frustrated the discovery process.

Federal Rule 37(d) provides that a Court may dismiss an action where a party refuses to cooperate in discovery. Specifically the rule states, "If a party … fails (1) to appear before the officer who is to take the deposition, … or (2) to serve answers or objections to interrogatories submitted under Rule 33, … or (3) to serve a written response to a request for inspection submitted under Rule 34, …," then the Court may, "make such orders in regard to the failure as are just, and among others it may take any

action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule." Fed. R. Civ. P. 37(d).  Subparagraph (C) of subdivision (b)(2) states that a court may issue an order "dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." Fed. R. Civ. P. 37(b)(2)(C).

The rule is used "generally for sanctions against parties or persons unjustifiably resisting discovery."  Fed. R. Civ. P. 37 advisory committee's note (1970).  Moreover this Court has held that Rule 37(d) "does not require violation of a Court order before sanctions may be imposed." *Hicks v. Feeney*, 124 F.R.D. 79, 81 (D. Del. 1987).

Dismissal is an extreme sanction, but the courts have not hesitated to dismiss a case where "a plaintiff has frustrated the purposes of discovery."  *Hicks*, 124 F.R.D. at 81.  The Third Circuit holds that a district court should consider, "the propriety of punitive dismissals in light of the factors outlined in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir. 1984)."  *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992).  The six *Poulis* factors that a court should consider are:  (a) the extent of the party's personal responsibility; (b) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (c) a history of dilatoriness; (d) whether the conduct of the party was willful or in bad faith; (e) the effectiveness of alternative sanctions; and (f) the meritoriousness of the claim.  *Hicks*, 124 F.R.D. at 82 (citing *Poulis*, 747 F.2d at 868).  "Not all of the *Poulis* factors need be satisfied in order to dismiss a complaint."  *Mindek*, 964 F.2d at 1373.

Applying the *Poulis* factors to this case reveals that dismissal is appropriate as the plaintiff has blatantly and unjustifiably frustrated the purposes of discovery.

**The plaintiff's personal responsibility and prejudice to the state defendants.**

Carter appears *pro se* and thus is personally responsible for failing to comply with discovery. He has not responded to Interrogatory requests and unjustifiably refused to testify in his deposition. Such actions completely circumvented the state defendants' ability to elicit facts and information about the case. The state defendants have been severely prejudiced by the plaintiff's refusal to participate in discovery. The state defendants have not been able to gather the facts and information pertinent to this case. Thus they are unable to adequately defend against the allegations in the Complaint.

**The plaintiff's history of dilatoriness and willful and bad faith conduct.**

The record establishes that the plaintiff has a history of dilatoriness in cooperation with opposing counsel and his conduct has been willful and in bad faith. The plaintiff clearly understands the litigation and discovery process and demonstrates diligence when it comes to preserving his own rights in this litigation.

For example, the plaintiff filed an Answering Brief to CMS' Motion to Dismiss. (D.I. 35). He propounded discovery requests on the state defendants (D.I. 36, 37), which the state defendants responded to on December 21, 2007. (D.I. 45, 46). When Defendant Kastre did not answer the Complaint, the plaintiff requested and was granted a default judgment. (D.I. 27, 28). After Defendant Kastre answered the Complaint, the plaintiff attempted to enforce the default by way of letter to counsel for Defendant Kastre. (D.I. 49).

The record demonstrates the plaintiff's knowledge of the rules and active representation of his own interests. Yet, the plaintiff refuses to cooperate with the

defendants in their attempts to discover information necessary for defending the case, evidencing the plaintiff's history of dilatoriness and willful and bad faith conduct.

### Alternative Sanctions and the meritoriousness of the claim

Dismissal is the only appropriate remedy. The plaintiff has made clear his refusal to cooperate in the discovery process. At his deposition, the plaintiff refused to answer questions and indicated he would only do so with an attorney present. (Exhibit "A"). The plaintiff was clearly informed that that this is not a criminal matter where he is constitutionally entitled to representation, but a civil action that the plaintiff himself initiated, that attorneys are appointed at the discretion of the court in *pro se* civil cases and, regardless, the Federal Rules of Civil Procedure clearly allow the defendants to take his deposition. The plaintiff continued to refuse to testify evidencing that he will continue to refuse to comply with discovery. Thus dismissal is the only appropriate sanction.

The plaintiff's claims against the state defendants are not meritorious. The Complaint asserts numerous allegations which are not constitutionally actionable and frivolous, such as complaints about cold food. The remainder of the plaintiff's Complaint appears to assert allegations of deliberate indifference with respect to his medical care. The state defendants are correctional officers and a warden who are not personally involved in the medical treatment of inmates and, to the extent that they are named because of their supervisory responsibilities, the plaintiff can not maintain a § 1983 action against them. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Moreover, the allegations in the Complaint against the state defendants amount to one sentence each and Defendants Profaci and Forbes appear to be written in as an afterthought. The allegations are not even made with the requisite particularity sufficient to survive a Motion to Dismiss. *Evanko v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Regardless, the state defendants answered the Complaint to allow the plaintiff to have discovery in the action only to be stonewalled in their own attempts to discover relevant facts and information. The claims against the state defendants are frivolous or not meritorious and the case should be dismissed.

The plaintiff has unjustifiably refused to participate in discovery. This refusal has rendered the state defendants unable to effectively defend against the allegations in the Complaint. In light of the *Poulis* factors and the facts of this case, dismissal is the appropriate remedy. Therefore the Court should enter an order dismissing the case pursuant to Federal Rule 37 for the plaintiff's refusal to participate in discovery.

**II.    In the alternative, summary judgment is appropriate because the state defendants did not play an affirmative role in the alleged deprivation of the plaintiff's rights, they can not be held liable in their supervisory capacity, and they were not deliberately indifferent to the plaintiff's medical needs.**

Should the Court find that dismissal is not appropriate under Federal Rule 37, the Court should enter summary judgment in favor of the state defendants because they had no personal involvement in the alleged deprivation of the plaintiff's Eighth Amendment rights[2] and they can not be held liable in their supervisory capacity. Further, the state defendants were not deliberately indifferent to the plaintiff's medical needs.

---

[2] The plaintiff's Complaint also alleges that he is making a claim under the Americans with Disabilities Act ("ADA"), but he has not alleged even a *prima facie* case for an ADA claim and he repeatedly uses language consistent with an Eighth Amendment or medical negligence claim. Regardless, the plaintiff's

Federal Rule 56(c) permits a Court to grant summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To obtain summary judgment the moving party must demonstrate that he has met the standards of Rule 56(c). *Carter v. Exxon Company USA*, 177 F.3d 197, 202 (3d Cir. 1999).

A.    **Absence of Personal Involvement.**

To support a claim for a civil rights violation under § 1983, a plaintiff must show that the accused defendant had personal involvement in the alleged wrongs. *Rode*, 845 F.2d  at 1207.  A plaintiff must prove that the official "played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct." *Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981) (Garth, J. concurring in part, dissenting in part).

In addition, grievances or letters are not enough to impute knowledge to a defendant. *Brookins v. Williams*, 402 F.Supp.2d 508, 512 (D. Del. 2005) (quoting *Rode*, 845 F.2d at 1208)); *Spencer v. Kelchner*, 2007 WL 88084, *at 7. (M.D. Pa)("Allowing only a letter sent to an official to be sufficient to impose supervisory liability would permit an inmate to subject defendants to potential liability in any case in which the prisoner merely transmitted correspondence to the official."). (Exhibit "B"). Rather, to establish liability, a plaintiff must prove that a defendant personally directed, had actual knowledge of, or acquiesced in the alleged deprivation of his constitutional rights. *Rode*,

---

ADA claim against the individual state defendants fails because the ADA does not imposes liability upon individuals. 42 U.S .C. § 12131(1); *Favilla v. City of Passaic*, 146 F.3d 149 n. 1 (3d Cir.1998).

845 F.2d at 1207.  Without such proof the defendant cannot be held liable.  *See Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990).

Further, in a section 1983 action a supervisory official cannot be held liable solely under the theory of respondeat superior.  *Rode,* 845 F.2d at 1207.  Rather, to establish supervisory responsibility a plaintiff must show that the defendant was the moving force behind the alleged constitutional violation.  *Sample v. Diecks*, 885 F.2d 1099, 1116-17 (3d Cir. 1989).  "[A] 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person' … has exhibited deliberate indifference to the plight of the person deprived."  *Id.* at 1118.

### 1.    Warden Thomas Carroll

Thomas Carroll was the Warden of DCC during the relevant time periods in the plaintiff's Complaint.  The only allegation against Warden Carroll is that the plaintiff wrote him letters and the letters were ignored.  (Complaint, at Statement of Claim).  The plaintiff has not produced any evidence to support this assertion.  Regardless, as previously discussed, supervisor liability can not be based on correspondence to a prison official.  *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)(affirming summary judgment against prison commissioner and warden on Eighth Amendment medical treatment claim where the only allegations against the prison officials was their failure to respond to the inmate's complaint letters).

There must be evidence that the official was the "moving force" behind the constitutional violation.  There is no such evidence in the record.  On the contrary, there is a complete absence of evidence of any affirmative conduct on the part of Warden Carroll, and the plaintiff's unsupported allegations without any proof of affirmative

conduct is not a sufficient basis for liability under section 1983.  Summary judgment in favor of Warden Carroll should be granted.

### 2.    Staff Lt. Alisa Profaci and Lt. Peter Forbes

The allegations against Defendants Profaci and Forbes are completely unsupported by any evidence.  The plaintiff makes the unsupported allegation that Defendants Profaci and Forbes were "fully aware" of his medical treatment but he has provided no evidence to support this claim.  The record establishes otherwise as correctional officers are not privy to inmates' confidential medical records and/or treatment.  (Exhibits "C" and "D" – Profaci and Forbes Affidavits).

The plaintiff also asserts that he made various complaints to these officers, but he does not provide a date, a time, context, or any other information which would allow the officers to investigate and defend the claims.  At any given time, a correctional officer oversees hundreds of inmates and hears copious inmate complaints.  (Exhibit "C" – Profaci Affidavit).  Defendants Profaci and Forbes do not recall any specific complaints from the plaintiff.  (Exhibts "C" and "D" – Profaci and Forbes Affidavits).  And the plaintiff refused to provide any specific information in his deposition which would allow the defendants to perhaps pinpoint dates and/or times, or any information necessary to defend the claim.  Defendants Profaci and Forbes' names are also not included in any of the documents received from the plaintiff on January 28, 2008.

It is the plaintiff's burden to allege sufficient particularity in the Complaint in the first instance.  *Evanko*, 423 F.3d at 353.  Then, at the summary judgment stage, the plaintiff has the additional burden of coming forth with evidence sufficient to put before a jury to create a genuine issue of material fact that Defendants Profaci and Forbes was

personally involved in a deprivation of his constitutional rights. *Celetox Corp. v. Carter*, 477 U.S. 317, 322 (1986). The plaintiff has not met either burden and Defendants Staff Lt. Profaci and Lt. Forbes are entitled to judgment as a matter of law.

### B.    Failure to Establish an Eighth Amendment Claim

The Eighth Amendment protects from cruel and unusual punishment and requires that prison official provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). To succeed on a claim of deliberate indifference against prison officials, a plaintiff must establish that he has a serious medical need and that prison officials were deliberately indifferent to that need. *Id*. at 104. The Supreme Court requires that the plaintiff demonstrate the prison official acted recklessly by consciously disregarding a substantial risk of harm to establish "deliberate indifference" on the part of that official. *See Farmer v. Brennan*, 511 U.S. 825, 837-840 (1994) (adopting subjective recklessness standard from criminal law as the test for deliberate indifference under the Eighth Amendment).

Defendants Carroll, Profaci, and Forbes were not deliberately indifferent to the plaintiff's serious medical needs. As previously discussed, there is no evidence to suggest that any of the state defendants were aware of the plaintiff's medical complaints or medical treatment. Even if they had been made aware of the plaintiff's complaints, the state defendants have no medical training and are not competent to make independent judgments about medical matters. (Exhibits "C" and "D" – Profaci and Forbes Affidavits).

The DOC contracts with a medical provider to provide inmates with medical care. As evidenced by his own grievance (Exhibit "E") indicating that he disagrees with Dr.

Niaz's treatment recommendation, the plaintiff's dispute is with the medical treatment provided by licensed doctors and nurses, a complaint which is at best a medical malpractice claim inappropriate for a § 1983 action.

The DOC defendants do not provide medical care and the plaintiff has been unable to identify a constitutional basis for including them in this suit.  Absent any evidence that the state defendants had the requisite knowledge, the plaintiff cannot establish that they disregarded an excessive risk of harm to the plaintiff.  Thus he can not establish that the state defendants were deliberately indifferent to his medical needs and Defendants Carroll, Profaci, and Forbes are entitled to judgment as a matter of law.

WHEREFORE, Defendants Carroll, Profaci, and Forbes respectfully requests that this Honorable Court enter an order, substantially in the form attached hereto, dismissing the plaintiff's Complaint in accordance with Federal Rule 37, or, in the alternative, enter an order granting the state defendants judgment as a matter of law.

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**

*/s/ Stacey Xarhoulakos*
Stacey Xarhoulakos (#4667)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400
Attorney for State Defendants

Dated: February 07, 2008

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AARON K. CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-561-SLR |
| | ) | |
| COMMISSIONER STANLEY TAYLOR, | ) | |
| WARDEN THOMAS CARROLL, DR. | ) | |
| TAMMY Y. KASTRE, LINDA HUNTER, | ) | |
| CORRECTIONAL MEDICAL SYSTEMS | ) | |
| S/LT. ALISA[3] PROFACI, LT. PETER | ) | |
| FORBES, | ) | |
| Defendants. | ) | |

## ORDER

Upon Defendant Warden Thomas Carroll, Staff Lt. Alisa Profaci, and Lt. Peter Forbes' *Motion To Dismiss Pursuant To Federal Rule Of Civil Procedure 37 Or, In The Alternative, Motion For Summary Judgment* (the "Motion"); and it appearing that good and sufficient notice of the Motion has been given; and after due deliberation thereon:

**IT IS HEREBY ORDERED** as follows:

1.      The Motion is **GRANTED**.

2.      The above-captioned action is **DISMISSED WITH PREJUDICE** against Warden Thomas Carroll, Staff Lt. Alisa Profaci, and Lt. Peter Forbes.

SO ORDERED this _____ day of _____, 2008.

_____
The Honorable Sue L. Robinson
United States District Court Judge

---

[3] Improperly named as "Alisha" in the Complaint.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AARON K. CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-561-SLR |
| | ) | |
| COMMISSIONER STANLEY TAYLOR, | ) | JURY TRIAL DEMANDED |
| WARDEN THOMAS CARROLL, DR. | ) | |
| TAMMY Y. KASTRE, LINDA HUNTER, | ) | |
| CORRECTIONAL MEDICAL SYSTEMS | ) | |
| S/LT. ALISA PROFACI, LT. PETER | ) | |
| FORBES, | ) | |
| Defendants. | ) | |

**RULE 37(d) CERTIFICATE OF COUNSEL**

The undersigned counsel hereby certifies, pursuant to Rule 37(d) of the Federal Rules of Civil Procedure, that she conferred with Plaintiff by letter dated December 03, 2007 regarding his failure to respond to the Discovery Requests. Plaintiff has still not responded the Interrogatory Requests.

<div style="margin-left:40%">

**DEPARTMENT OF JUSTICE
STATE OF DELAWARE**

*/s/ Stacey Xarhoulakos*
Stacey Xarhoulakos (#4667)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for State Defendants

</div>

Dated: February 07, 2008

### *CERTIFICATE OF SERVICE*

I, Stacey Xarhoulakos, hereby certify that on February 7, 2008, I electronically

filed *State Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure

37 or, in the Alternative, Motion for Summary Judgment* with the Clerk of Court using

CM/ECF and have mailed by United States Postal Service, the document to the following

non-registered participant:

    Aaron K. Carter
    SBI # 179415
    Delaware Correctional Center
    1181 Paddock Road.
    Smyrna, DE. 19977

                             */s/ Stacey Xarhoulakos*
                             Stacey Xarhoulakos (#4667)
                             Deputy Attorney General
                             Delaware Department of Justice
                             Carvel State Office Building
                             820 N. French Street, 6th Floor
                             Wilmington, DE 19801
                             302-577-8400