IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AARON K. CARTER, 179415 | : | |
| DELAWARE CORRECTIONAL CENTER | : | |
| 1181 PADDOCK ROAD | : | |
| SMYRNA, DE 19977, | : | |
| | : | |
| Plaintiff, | : | C.A. No. 06-561 SLR |
| | : | |
| v. | : | TRIAL BY JURY DEMANDED |
| | : | |
| COMMISSIONER STANLEY TAYLOR, | : | |
| WARDEN THOMAS CARROLL, DR. | : | |
| TAMMY Y. KASTRE, FCM, | : | |
| LINDA HUNTER – FCM – CMS | : | |
| CORRECTIONAL MEDICAL SYSTEMS, | : | |
| S/LT. ALISHA PROFACI | : | |
| LT. PETER FORBES, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES OF
CORRECTIONAL MEDICAL SERVICES, INC., IN SUPPORT
OF ITS AMENDED MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION
FOR SUMMARY JUDGMENT**

Defendant, Correctional Medical Services, Inc., through its undersigned counsel, hereby

respectfully moves this Honorable Court to enter the attached Order, dismissing plaintiff's

Complaint with prejudice or, in the alternative, granting summary judgment and, in support

thereof, avers as follows:

I.      **STATEMENT OF FACTS AND PROCEDURAL POSTURE**

Correctional Medical Services, Inc. ("CMS") is a private corporation that has contracted

with the State of Delaware to provide medical services in Delaware prisons beginning on July 1,

2005.[1] The Complaint in this matter was filed under 42 U.S.C. § 1983 on September 11, 2006.

---

[1] Prior to July 1, 2005, CMS had contracted with the State of Delaware to provide medical care from July 1,
2000 until June 30, 2002.

(D.I. 2). The following is a summary of the "facts" asserted by plaintiff in his Complaint. (D.I. 2).

Plaintiff claims that as a result of an altercation with another inmate on March 1, 2004 he was placed in the Secured Housing Unit (SHU). The inmate was not provided representation at the hearing, nor could he call any witnesses, and the incident was as a direct result of the inmate being "AIDS defined".

The inmate further claims he is infected with HIV, and generally, claims at some point in time he suffered from rashes, dizziness, weight loss and other medical conditions were brought to the attention of "defendants", through grievances and letters, and the same were "ignored."

He asserts that many inmates in the SHU and Multi-Housing Unit (MSU) and Building 21 have HIV/AIDS/hepatitis C, and other chronic illnesses that are denied treatment "unless they are falling out of their cells". The inmate further asserts that it "often takes months to be seen by [a] doctor" and that "plaintiff has went [sic] months without seeing a doctor or receiving medication". The inmate recounts an episode of passing blood in his urine, being ignored by a nurse, submitting numerous sick call slips that were ignored and, eventually, passing a kidney stone. Dr. Niaz (First Correctional Medical) stated that the inmate is resistant to all current medications but four. Part of the inmate's problem is that he is unable to take medication at prescribed times. According to the inmate, he has written to Dr. Kastre (First Correctional Medical) concerning the lack of medical treatment and received no response, and written to Defendants Taylor and Carroll concerning various medical and housing problems. All correspondence has been ignored.

Plaintiff claims that between June 30, 2005 - July 10, 2005, he experienced passing blood, rashes, dizziness, weight loss which was "coupound [sic] by refusal to refill medications."

Further, the ill inmates in SHU, MSU and Building 21 are forced to walk to interviews and the main hospital with waist chains, leg shackles, without canes, walkers or wheelchairs.

The inmate, and others located in the SHU, MSU and Building 21, receive cold food, fail to receive their coffee and juice with their meals. Cold food often causes the plaintiff to be severely sick. The inmate is supposed to get double portions of food, but has not since 2004.

The relief requested by the plaintiff includes class certification on behalf of the ill inmates housed in the SHU, MSU and Building 21 and that counsel be appointed to protect the interest of the class; declaratory judgment determination that the medical treatment and living conditions of the inmates with HIV/AIDS/hepatitis C, and other chronic illnesses in SHU, MSU and Building 21 are unconstitutional, violative of the Americans With Disabilities Act (ADA) and unlawful; and preliminary and permanent injunctions to immediately provide the inmates with HIV/AIDS/hepatitis C, and other chronic illnesses, in SHU, MSU and Building 21 with appropriate medical specialists, adequate and appropriate medical care, hot meals and adequate diagnosis and culturing of opportunistic infections; and, finally, punitive damages in the amount of one million dollars.

From May 10, 1999 through April 12, 2001, prior to Plaintiff being incarcerated for his current sentence, he treated with Infectious Disease Consultants for his HIV condition. Infectious Disease Consultants medical records are attached as Exhibit "1". It was documented he had hepatitis C; however, treatment was not administered and it is documented in the April 12, 2001 note that hopefully his HIV will become non-detectable and they should look at treatment for his hepatitis C condition at some point. On approximately May 25, 2001, Plaintiff was incarcerated in the Delaware prison system.

Plaintiff has received regular treatment for his HIV condition. Notwithstanding this, a blood test performed in January 2003 revealed he had begun to exhibit mutations in the virus which were resistant to some antiretroviral medications. Laboratory test results are attached as Exhibit "2". As a result, on January 16, 2003, Highly Active Anti-Retroviral Therapy ("HAART") treatment was discontinued to protect and/or preserve future options.

Interdisciplinary Progress Notes are attached as Exhibit "3" and Physician Order Sheets are attached as Exhibit "4". Therefore, Plaintiff's treatment was altered and medications to which he was not resistant were provided. Throughout this time to the present, Plaintiff continued to receive regular blood tests and treatment. As a result, blood work performed on January 8, 2008 revealed a non-detectable level of HIV virus.

Neither CMS nor any of its employees exhibited a deliberate indifference to Plaintiff's serious medical needs. Dr. Lawrence McDonald, a specialist in infectious diseases, opined the treatment Plaintiff ahs received is necessary, timely and appropriate based upon Plaintiff's clinical condition and concurrent disease processes. *See* Affidavit of Lawrence McDonald, M.D. attached as Exhibit "5". Dr. McDonald is a specialist in treating infectious diseases, including HIV and hepatitis C, both of which Plaintiff has tested positive for. Dr. McDonald is familiar with Plaintiff's medical condition, has reviewed his medical chart and has been active in his treatment program. Plaintiff has received continued treatment consisting of regular blood testing to measure the status and progression and/or recession of his HIV condition. In addition, Plaintiff has had follow-up visits with medical staff including treatment and adjustments with medication.

On January 8, 2008, blood work was performed which revealed Plaintiff had a non-detectible level of HIV virus. Plaintiff's CD4 count was 962. CD4 cells are monitored to assist in determining the status of HIV infection.

Plaintiff was not eligible for treatment for his hepatitis C condition. *See* Affidavit of Lawrence McDonald, M.D. attached as Exhibit "2". Due to Plaintiff' active HIV condition, the regime of treatment he was undergoing for his HIV condition and the signs and symptoms with which he presented, it was a contraindication for him to begin treatment for his hepatitis C condition. However, since blood work performed on January 8, 2008 revealed a non-detectable level of HIV virus, Mr. Carter may now be a candidate for hepatitis C treatment.

CMS has no custom or policy that caused a delay or denial in any treatment to Plaintiff. *See* Affidavit of Lawrence McDonald, M.D. attached as Exhibit "2". Based on Dr. McDonald's medical knowledge and personal knowledge of Plaintiff's condition, including his review of Plaintiff's chart and records, it is his opinion Plaintiff received proper care for his HIV and Hepatitis C conditions.

This is the Memorandum of Points and Authorities by CMS in Support of its Amended Motion to Dismiss or in the alternative Motion for Summary Judgment.

## II.    STANDARD OF REVIEW

A claim may be dismissed because it fails to allege sufficient facts to support a cognizable legal claim.[2] A complaint "must provide the defendants with fair notice of what plaintiff's claim is and the grounds upon which it rests."[3] Specifically, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations.[4] Additionally, even a *pro se* litigant must plead sufficient facts to sustain a legal claim.[5]

A motion to dismiss for failure to state a claim upon which relief can be granted should be granted in the event that it is "beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[6] However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."[7]

---

[2] Fed. R. Civ. P. 12 (b)(6).

[3] *United States v. City of Philadelphia*, 644 F.2d 187, 204 (3d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

[4] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)*(citing Boykins v. Ambridge Area Scholl District*, 621 F.2d 75, 80 (3d Cir. 1980); *Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir. 1978)).

[5] *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).

[6] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[7] *Morse v. Lower Merion School Distric*t, 132 F.3d 902, 906, n. 6 (3d Cir. 1997)(*citing In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)(*quoting Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)); *citing* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1997) (noting that courts, when examining 12(b)(6) motions, have rejected "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations"); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) (affirming dismissal of § 1983 action and noting that "while the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d

A.     **LEGAL ARGUMENTS**

1.     **Plaintiff willfully and knowingly refused to be deposed or cooperate in the discovery process**

Defendant, CMS, adopts the arguments set forth in State Defendant's Motion to Dismiss regarding this argument and further avers:

"The court clearly has the power to dismiss the case as a sanction against a party who fails to obey an order regarding discovery."[8]  "The trial court has discretion over which sanctions to impose and "may make such orders in regard to the failure as are just."[9]  In determining whether to dismiss a case, the trial court must weigh the following factors: (1) The extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or attorney was willful or in bad faith; (5) the effectiveness of the sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.[10]  However, not all of these factors must be found for dismissal to be warranted.[11]  In *Hicks*, the Plaintiff, after answer some questions during his deposition, refused to answer any more questions and refused to permit Defendants to depose him any further and the court dismissed his Complaint as a result.

By leave of Court, Plaintiff's deposition was scheduled for January 11, 2008.  (D.I. 39).  Undersigned counsel and counsel for State Defendants appeared for the deposition as was Plaintiff; however, upon arriving at the Delaware Correctional Center and setting up for the deposition, Plaintiff appeared and stated he would not testify.  (A copy of the transcript of the January 11, 2008 deposition of Plaintiff is attached as Exhibit "6".)

---

278, 284 (5th Cir. 1993)("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

[8] *Hicks v. Feeney*, 850 F.2d 152, 155 (3d Cir. 1988) (*citing* Fed. R. Civ. P. 37(b)(2)(C)).

[9] *Id*. (*citing* Fed. R. Civ. P. 37(b)(2)).

[10] *Id*. at 156 (*citing Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984).

[11] *Id*. at 156.

Plaintiff brought this suit asserting claims against CMS the basis for which CMS is entitled to discover pursuant to discovery methods permitted by Court rule. Plaintiff's refusal to be deposed prejudices the ability of CMS to properly prepare an adequate defense to his claims. As is mentioned in the following arguments, Plaintiff's claims are nebulous at best and in order to prepare a defense, CMS needs, and is entitled to, depose Plaintiff since he has information regarding his claims that is only realistically obtainable through deposition.

In weighing the *Poulis* factors, it is clear dismissal of Plaintiff's Complaint is warranted in this case, just as it was in *Hicks*. Plaintiff has refused to comply with discovery and there is no question this was willful and wanton and at his own behest and that of no other party. Plaintiff's refusal has prejudiced the ability of CMS to prepare a defense to his claims. Although this is Plaintiff's first refusal, he was adamant he would not testify and therefore it would be a waste of the Court's time and resources for CMS to seek to compel him to appear. In addition, sanctions other than dismissal are inconsequential because monetary sanctions would likely have little effect and limitations on the testimony he could present would have to be an absolute bar because his refusal to testify was a blanket refusal and thus no information was obtained by the Defendants. Lastly, as is set forth below, Plaintiff's claims lack merit. However, even if they are meritorious, which is denied, Plaintiff's willful and wanton refusal to be deposed has sufficiently prejudiced CMS, such that his Complaint should be dismissed with prejudice.

### 2. Plaintiff Fails To State A Claim For A Constitutional Violation Against CMS When Plaintiff Fails To Allege Personal Involvement By CMS

In order to be liable in a civil rights action, a defendant must have personal involvement in the alleged wrongs.[12] "Personal involvement" may be demonstrated through "allegations of

---

[12] Specifically, the Third Circuit has held that:

A defendant is a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicate solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal discretion or actual knowledge and

personal direction or of actual knowledge and acquiescence."  These allegations, however, must

be made with appropriate particularity.[13]  Supervisory liability may attach if the supervisor

implemented deficient policies and was deliberately indifferent to the resulting risk or the

supervisor's actions and inactions were "the moving force" behind the harm suffered by the

plaintiff.[14]

Plaintiff fails to allege "personal involvement" by CMS.  Under plaintiff's Statement of

Claim, there is one mention of CMS and  plaintiff asserts, "[a]s a result of …Correctional

Medical Services refusal to see inmates housed in SHU, MSU and Building 21 *in a confidential*

*manner*, the status of plaintiff and other inmates with HIV/AIDS/Hep C, and other chronic

illnesses.  Has resulted in inmates with the aforemention [sic] including plaintiff being harassed

and discriminated against by both inmates and correctional staff."   (D.I. 2 at § IV (emphasis

supplied)).

Even assuming, *arguendo*, that the inmate has identified a "serious medical need" in his

Complaint, he fails to identify any conduct by CMS that rises to the level of deliberate

indifference to a prisoner's serious illness or injury, nor does he identify a specific time when

these constitutional violations occurred.  In fact, plaintiff does not claim a denial of medical care,

or a refusal to provide medical care and treatment, but instead objects to the lack of treatment in

a "confidential manner" by CMS.

The only other allegation that could, arguably, be construed as against CMS is the

statement that "from June 30, 2005 - July 10, 2005, he experienced passing blood, rashes,

dizziness, weight loss" which was "coupound [sic] by refusal to refill medications." (D.I. 2 at §

IV).  There is no mention of the person or persons responsible for any alleged refusal to refill

---

acquiescence, however, must be made with appropriate particularity.

[13] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)(citations omitted).
   Id.
[14] *Smaple v. Diecks*, 885 F.2d 1099, 1117-118 (3d Cir. 1989; *see also City of Canton v. Harris*, 489 U.S.
378 (1989); *Heggenmiller v. Edna Mahan Correctional Institute for Women*, 128 Fed.Appx. 240 (3d Cir. 2005).

medications, or the time period when the alleged refusal occurred.[15]  CMS is entitled to such specificity.  This Complaint must be dismissed against CMS.  Moreover, to state a claim against CMS, a private corporation rather than a person, a discrete standard applies.

### 3.    CMS cannot be held liable under a theory of *respondeat superior.*

To the extent that plaintiff's allegations in the Complaint can be construed as against CMS, the allegations appear to be grounded solely upon a theory of *respondeat superior.*  Under *Monell v. Department of Social Services of New York,* a municipality cannot be held liable under a theory of *respondeat superior.*[16] These principles likewise apply to the liability of private corporations offering health care services.[17] CMS cannot be held liable for a constitutional violation as an abstract entity.[18]

### 4.    Plaintiff fails to assert a policy or custom of deliberate indifference to his serious medical needs.

Plaintiff fails to state a claim against CMS since he fails to allege either that a policy or custom applied by CMS or a CMS official, who has the power to make policy, is responsible for either i)  an affirmative proclamation of a policy demonstrating deliberate indifference to his serious medical needs or ii)  acquiescence in a well-settled custom demonstrating deliberate indifference to his serious medical needs.

While a municipality cannot be held liable under a theory of *respondeat superior*, it can be held liable for a policy or custom that demonstrates deliberate indifference.[19] "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to

---

[15] Many of the allegations in the Complaint reference no time period.  To the extent that any of plaintiff's claims occurred more than two years prior to the filing of the instant Complaint, those claims are time-barred. *McDowell v. Delaware State Police,* 88 F.3d 188, 190 (3d Cir. 1996);  *Carr v. Town of Dewey Beach,* 730 F. Supp. 591 (D. Del. 1990); *Marker v. Talley,* 502 A.2d 972 (Del. Super. Ct. 1985).

[16] 436 U.S. 658 (1978).  *See also Heine v. Receiving Area Personnel,* 711 F.Supp. 178, 185 (D.Del. 1989) ("Traditional concepts of *respondeat superior* do not apply to civil rights actions brought pursuant to 42 U.S.C. § 1983.")

[17] *Miller v. Correctional Medical Systems, Inc.,* 802 F. Supp. 1126, 1132 (citing *Guyer v. Correctional Medical Systems, Inc.*, C. A. No. 86-361-JLL, Magistrate's Report and Recommendation, slip. op. at 3 (D. Del. Apr. 16, 1990)(adopted by final order May 14, 1990)).

[18] *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1063 (3d Cir. 1991).

[19] *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978).

the action' issues an official proclamation, policy or edict."[20] Specifically, municipalities may be

held liable under § 1983 only for acts for which the municipality itself is actually responsible,

"that is, acts which the municipality has officially sanctioned or ordered."[21]  Second, only those

officials who have "final policymaking authority" may by their actions subject the government to

§ 1983 liability.[22]   Third, whether a particular official has "final policymaking authority" is a

question of state law.[23]  Fourth, the challenged action must have been taken pursuant to a policy

adopted by the official or officials responsible under state law for making policy.[24]

    In *St. Louis v. Praprotnik,* the Supreme Court made it clear that "the authority to make

municipal policy is necessarily the authority  to make *final* policy."[25] There can be no *de facto*

final policymaking authority.[26]  Moreover, "it is self-evident that official policies can only be

adopted by those legally charged with doing so...[the Supreme Court] are aware of nothing in §

1983 or its legislative history…that would support the notion that unauthorized acts of

subordinate employees are official policies because they may have the "potential" to become

official policies or may be "perceived as" official policies."[27]

    Custom, on the other hand, can be proven by showing that a given course of conduct,

although not specifically endorsed or authorized by law, is so well-settled and permanent as

virtually to constitute law.[28] A single isolated incident…cannot establish an official policy or

practice of the municipality sufficient to render it liable for damages under 1983.[29]  In either

instance, when a plaintiff alleges as unconstitutional policy or an unconstitutional custom, *a*

---

[20] *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)(quoting *Pembaur v City of Cincinnati*, 475 U.S. 469, 481 (1986)).
[21] *Penbaur*, 475 U.S. at 480.
[22] *Id* at 483.
[23] *Id.*
[24] *Id*. at 482-483, and n.12.
[25] 485 U.S. 112, 127 (1987).
[26] *Id.* at 131.
[27] *Praprotnik*, 485 U.S. at 125.
[28] *Andrews*, 895 F.2d at 1480; *see also Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989) ("Custom may be established by proof of knowledge and acquiescence.").
[29] *Oklahoma City v. Tuttle***,** 471 U.S. 808 (1988).

*plaintiff must allege that the official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.*[30]

Plaintiff has not alleged *any* policy or custom, let alone any *specific* policy or custom, of CMS that proximately caused deliberate indifference to his serious medical needs, nor identified any CMS official who has the power to make such a policy, nor articulated any facts that would tend to support a claim of "an official proclamation, policy or edict", nor any "well-settled and permanent course of conduct" by CMS.  CMS is entitled to dismissal of this Complaint against it.

CMS may only be held liable for a policy or custom that demonstrates deliberate indifference to plaintiff's serious medical needs.[31]  The Complaint does not name an individual health care provider, nor does it attribute "personal involvement" to any individual employee of CMS.  (D.I. 2).  More importantly, Plaintiff has failed to allege any unconstitutional policy or custom against CMS, nor has he alleged that the execution of such policy or custom caused any constitutional tort.

CMS does not have a custom or policy which caused a delay or denial in any treatment to Plaintiff.  *See* Affidavit of Lawrence McDonald, M.D. attached as Exhibit "2".  Plaintiff has received necessary, timely and appropriate treatment for his HIV and hepatitis C conditions.  *See* Affidavit of Lawrence McDonald, M.D. attached as Exhibit "5" as well as medical records attached as Exhibits "1-4".  From May 10, 1999 through April 12, 2001, prior to Plaintiff being incarcerated for his current sentence, he treated with Infectious Disease Consultants for his HIV condition.  It was documented he had hepatitis C; however, treatment was not administered and it is documented in the April 12, 2001 note that hopefully his HIV will become non-detectable and they should look at treatment for his hepatitis C condition at some point.  Infectious Disease

---

[30] *Andrews*, 895 F.2d at 1480.
[31] *Miller v. Correctional Medical Systems, Inc.,* 802 F. Supp. 1126 (D. Del. 1992)(*citing Monell v. Dept. of Social Services*, 436 U.S. 658 (1978)).

Consultants' records are attached as Exhibit "1". On approximately May 25, 2001, Plaintiff was incarcerated in the Delaware prison system.

Since Plaintiff's incarceration at DCC, he has continued to receive treatment for his HIV condition; however a blood test performed in January 2003 revealed he had begun to exhibit mutations in the virus which were resistant to some antiretroviral medications. As a result, on January 16, 2003, Highly Active Anti-Retroviral Therapy ("HAART") treatment was discontinued to protect and/or preserve future options. Therefore, Plaintiff's treatment was altered and medications to which he was not resistant were provided. Throughout this time to the present, Plaintiff continued to receive regular blood tests and treatment. As a result, blood work performed on January 8, 2008 revealed a non-detectable level of HIV virus.

Neither CMS nor any of its employees exhibited a deliberate indifference to Plaintiff's serious medical needs. *See* Affidavit of Lawrence McDonald, M.D. attached as Exhibit "2". Dr. Lawrence McDonald, a specialist in infectious diseases, opined that the treatment Plaintiff has received is necessary, timely and appropriate based upon Plaintiff's clinical condition and concurrent disease processes. *See* Affidavit of Lawrence McDonald, M.D. attached as Exhibit "5". Dr. McDonald is a specialist in treating infectious diseases, including HIV and hepatitis C, both of which Plaintiff has tested positive for. Dr. McDonald is familiar with Plaintiff's medical condition, has reviewed his medical chart and has been active in his treatment program. Plaintiff has received continued treatment consisting of regular blood testing to measure the status and progression and/or recession of his HIV condition. In addition, Plaintiff has had follow-up visits with medical staff including treatment and adjustments with medication.

Due to Plaintiff' active HIV condition, the regime of treatment he was undergoing for his HIV condition and the signs and symptoms with which he presented, it was a contraindication for him to begin treatment for his hepatitis C condition. However, since blood work performed on January 8, 2008 revealed a non-detectable level of HIV virus, Mr. Carter may now be a

candidate for hepatitis C treatment.  *See* Affidavit of Lawrence McDonald, M.D. attached as Exhibit "2".

Plaintiff has not proffered any expert testimony to support his claims that CMS has a custom or policy that caused delay or denial of treatment, that CMS or any of its employees exhibited a deliberate indifference to Plaintiff's serious medical needs or that rebuts the competent expert opinion of Dr. McDonald who has treated Plaintiff and is familiar with Plaintiff's treatment history.

### 5.  Plaintiff's State Law Claims Must Fail

To the extent that Plaintiff's claims fall within the definition of "medical negligence" pursuant to 18 *Del. C.* § 6801 (7), expert testimony must be provided to survive a motion for summary judgment.  According to the statute, "'[m]edical negligence' means any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient."[32]  Plaintiff bears the initial burden of presenting expert medical testimony on both the deviation from the applicable standard of care and causation.[33] As this Court explained in *McCusker*,

> Consistent with the plain language of the [Medical Malpractice] Act, 'the production of expert testimony is an essential element of a plaintiff's medical malpractice case and, as such, is an element on which he [] bears the burden of proof.'  Summary judgment  is proper when a plaintiff fails to adduce any expert medical testimony in support of his allegations of negligence under the Act.[34]

The Plaintiff has failed to provide any expert testimony on either an alleged deviation in the standard of care or causation.  As such, to the extent plaintiff states a claim for state law medical negligence, CMS is entitled to summary judgment as a matter of law on these claims.

### 6.      Plaintiff Has No Standing to Assert Class Action Certification

---

[32]  *Id.*
[33]  *McCusker v. Surgical Monitoring Assocs.*, 299 F. Supp. 2d 396, 398 (D. Del. 2004)(citing *Burkhart v. Davies*, 602 A.2d 56 Del. 1991 (further citations omitted).
[34]  *Id.* (citation omitted).

Plaintiff requests that this matter be certified as a "class action."  D.I. 2 at § V. However, "courts have consistently held that a prisoner acting *pro se* is inadequate to represent the interests of his fellow inmates in a class action."[35] Therefore, to the extent Plaintiff attempts to assert claims on behalf of anyone but himself, those claims should be dismissed.

### 7.    Plaintiff Fails To State A Claim Under the Americans With Disabilities Act ("ADA")

To establish a *prima facie* case under Title II of the ADA the plaintiff must show that: "(1) he is a 'qualified person with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability."[36]  Plaintiff has not alleged any facts that demonstrate that he was "excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity" because of any "disability".  Therefore, to the extent Plaintiff purports to assert claims under the ADA, those claims should be dismissed.

### B.    CONCLUSION

Based upon the foregoing, all claims against Defendant, Correctional Medical Services, Inc., should be dismissed pursuant to Federal Rule of Civil Procedure 37(b) and/or 12 (b)(6) for Plaintiff's refusal to allow Defendants to take his deposition and for failure to state any claim upon which relief can be granted.  Accordingly, Defendant, Correctional Medical Services, Inc., respectfully requests that the Amended Motion of Defendant, CMS, to Dismiss or in the Alternative for Summary Judgment filed contemporaneously herewith be granted with prejudice.

---

[35] *Jordan v. Delaware*, 433 F. Supp. 2d 433, 439 (D. Del. 2006), *citing Brathwaite v. Taylor,* No. 00-435-GMS, 2001 WL 1117134, at *2 n.3 (D. Del. Sept. 13, 2001)(further citations omitted).

[36] *Jordan v. Delaware*, 433 F. Supp. 2d 433, 439 (D. Del. 2006)(citing *Gorrell v. Del. State Police,* No. 98-649-SLR, 1999 WL 1893142, at *3 (D. Del. Oct. 20, 1999).

MARSHALL, DENNEHEY, WARNER,
COLEMAN AND GOGGIN

BY:    /s/  Eric Scott Thompson
       KEVIN J. CONNORS, ESQ.  (DE ID #2135)
       ERIC SCOTT THOMPSON, ESQ. (DE ID # 4633)
       1220 N. Market Street, 5th Floor
       P.O. Box 8888
       Wilmington, DE  19899-8888
       (302) 552-4370
       Attorneys for Defendant, Correctional Medical
       Services, Inc.

**DATED:  February 7, 2008**

15/581108.v1

**EXHIBIT 6**

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

AARON K. CARTER, 179415          )
DELAWARE CORRECTIONAL CENTER     )
1181 PADDOCK ROAD                )
SMYRNA, DE 19977,                )
                                 )
          Plaintiff,             )
                                 )
v.                               )
                                 )    C.A. No. 06-561
COMMISSIONER STANLEY TAYLOR,     )
WARDEN THOMAS CARROLL, DR.       )
TAMMY Y. KASTRE, FCM,            )
LINDA HUNTER - FCM - CMS         )
CORRECTIONAL MEDICAL SYSTEMS,    )
S/LT. ALISHA PROFACI             )
LT. PETER FORBES,                )
                                 )
          Defendants.            )

     Deposition of AARON K. CARTER taken pursuant to
notice at the Delaware Correctional Center, 1181 Paddock
Road, Smyrna, Delaware, beginning at 10:10 a.m. on
Friday, January 11, 2008, before Robert Wayne Wilcox,
Jr., Registered Professional Reporter and Notary Public.

APPEARANCES:

          AARON K. CARTER (pro se)
          SBI# 179415
          Delaware Correctional Center
          1181 Paddock Road
          Smyrna, Delaware  19977
          for the Plaintiff,


                   CORBETT & WILCOX
     230 North Market Street - Wilmington, Delaware 19801
                     (302) 571-0510

             Corbett & Wilcox is not affiliated
          with Wilcox & Fetzer, Court Reporters

Page 2

```
 1    APPEARANCES (CONT'D):

 2          STACEY XARHOULAKOS, ESQ.
            DEPARTMENT OF JUSTICE
 3             Carvel State Office Building
               820 North French Street
 4             Wilmington, Delaware  19801
               for the Defendants Commissioner Stanley Taylor,
 5             Warden Thomas Carroll, S/LT. Alisha Profaci and
               Lt. Peter Forbes,
 6
            ERIC SCOTT THOMPSON, ESQ.
 7          MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
               1220 North Market Street - 5th Floor
 8             Wilmington, Delaware  19801
               for the Defendant CMS, Correctional Medical
 9             Services.

10                        - - - - -

11                  (The reporter attempted to administer

12    the oath, at which time the witness stated he did not

13    wish to answer any questions without an attorney

14    present.)

15                  MR. THOMPSON:  We'll just put this on

16    the record so that we're all clear on this.

17                  You just indicated without an attorney

18    present you do not wish to answer any questions.

19                  MR. CARTER:  Correct.

20                  MR. THOMPSON:  Okay.  This is your

21    lawsuit.  Correct?

22                  MR. CARTER:  Yes.

23                  MR. THOMPSON:  You filed this lawsuit?

24                  MR. CARTER:  Yes.
```

Page 3

1          MR. THOMPSON:  And you're currently not

2   represented in this lawsuit?

3          MR. CARTER:  Right.

4          MR. THOMPSON:  Correct?

5          MR. CARTER:  (Indicating.)

6          MR. THOMPSON:  Okay.

7          MR. CARTER:  With some help.

8          MR. THOMPSON:  Well, have you sought

9   representation?

10          MR. CARTER:  No.  I've never done this

11   before, so I don't know -- I didn't know this was going

12   on -- what this entailed, what it's about.  But I don't

13   want to answer any questions without an attorney.  I

14   don't want to do this without an attorney advising me

15   what to do.

16          MS. XARHOULAKOS:  Mr. Carter, my name is

17   Stacey Xarhoulakos.  I represent the defendants who work

18   for the Department of Correction.

19          Do you understand that this is a civil

20   case and not a criminal case?

21          MR. CARTER:  Yes.

22          MS. XARHOULAKOS:  Okay.  And you

23   understand that this is your lawsuit that you filed?

24          MR. CARTER:  Right.

Aaron K. Carter

Page 4

1              MS. XARHOULAKOS:  Do you understand that

2    there are rules that are followed in the courts?  The

3    rules that you follow to file your complaint, file your

4    answer, they're called Federal Rules of Civil Procedure.

5              MR. CARTER:  I assume there's rules, but

6    I don't know them.  Someone is assisting me in this.  I

7    don't know how to do this.

8              MS. XARHOULAKOS:  Did you receive our

9    discovery requests that we sent to you, the

10   interrogatories and requests for production -- the

11   documents that we sent asking you for information?

12             MR. CARTER:  Right.  I asked someone

13   to -- the response was -- for some help.

14             MS. XARHOULAKOS:  Okay.  But you did

15   receive those; correct?

16             MR. CARTER:  Yes.

17             MS. XARHOULAKOS:  Okay.  Do you

18   understand that in a civil case you're not

19   constitutionally entitled to an attorney in a civil

20   proceeding?  Do you understand that?

21             MR. CARTER:  No.

22             MS. XARHOULAKOS:  Okay.

23             MR. CARTER:  You're telling me this.  I

24   never heard this before.

Aaron K. Carter

Page 5

1              MS. XARHOULAKOS:  Okay.  Well, this is a

2     civil case.  It's your case.  And we're here to depose

3     you for discovery.  It's a fact finding to get

4     information about the case.  You are required under the

5     rules to answer questions so that we can find out about

6     the case and what your claims are.  And although Courts

7     can appoint counsel in their discretion, you're not

8     constitutionally entitled to an attorney in a civil

9     proceeding.  So it's your choice.  I can't make you

10    answer questions today, of course.  But I do have an

11    obligation to tell you that the rules allow the

12    deposition to occur in a civil proceeding.

13              Do you understand that?

14         MR. CARTER:  Yes.

15              MS. XARHOULAKOS:  Okay.  Is it still

16    your position that you do not want to answer questions?

17              MR. CARTER:  Yes.  I'll try to seek an

18    attorney.

19              MS. XARHOULAKOS:  Okay.  And just so you

20    understand, based on your failure to answer any

21    deposition questions, more than likely we will file a

22    motion to dismiss the case because you're not agreeing to

23    participate in discovery.  Do you understand that?

24              MR. CARTER:  I failed to participate

Page 6

1    without an attorney present.

2              MS. XARHOULAKOS:  Okay.

3              MR. CARTER:  I mean, when I get an

4    attorney, then I'll participate with his guidance.  I

5    don't know what I'm doing on this.

6              MS. XARHOULAKOS:  I just wanted to

7    establish on the record my obligation to tell you, you

8    know, what rights I think you have and what the rules

9    state.  And I just want to make sure that that's your

10   position after knowing all of that.  Correct?

11             MR. CARTER:  Yes.

12             MS. XARHOULAKOS:  Okay.  Mr. Thompson.

13             MR. THOMPSON:  I guess I don't have

14   anything further.  I represent CMS.  My name is Eric

15   Thompson, by the way.  I guess the next step -- we'll

16   file a motion to dismiss the case.  Okay?

17             MR. CARTER:  Okay.

18             MR. THOMPSON:  Thank you.

19             MR. CARTER:  I will attempt to obtain an

20   attorney.  So that's all I can do.  I'm not willing to do

21   this without an attorney.  I don't know what I'm doing.

22   What benefit do I get out of doing something I don't even

23   know what I'm doing?  I'm just trying to protect myself.

24   And I'm going to attempt to get an attorney.  So I just

Aaron K. Carter

Page 7

1    want that on the record.

2                    MS. XARHOULAKOS:   Okay.   Thank you.

3                    MR. THOMPSON:   Thank you.

4                    (The deposition concluded at 10:15 a.m.

5    this same day.)

6                          - - - - -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Page 8

```
 1                C E R T I F I C A T E

 2   STATE OF DELAWARE:
                         :
 3   NEW CASTLE COUNTY:

 4           I, Robert Wayne Wilcox, Jr., a Registered

 5   Professional Reporter, within and for the County and

 6   State aforesaid, do hereby certify that the foregoing

 7   matter was taken before me, pursuant to notice, at the

 8   time and place indicated; that the foregoing matter was

 9   correctly recorded in machine shorthand by me and

10   thereafter transcribed under my supervision with

11   computer-aided transcription; that the foregoing hearing

12   is a true record; and that I am neither of counsel nor

13   kin to any party in said action, nor interested in the

14   outcome thereof.

15           WITNESS my hand and official seal this 11th day

16   of January A.D. 2008.

17

18         Robure wase ottx x

19         ROBERT WAYNE WILCOX, JR.
           REGISTERED PROFESSIONAL REPORTER
20         CERTIFICATION NO. 101-RPR
           (Expires January 31, 2008)
21

22

23

24
```

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AARON K. CARTER, 179415         :
DELAWARE CORRECTIONAL CENTER   :
1181 PADDOCK ROAD             :
SMYRNA, DE 19977,              :
                                   :
        Plaintiff,           :     C.A. No. 06-561 SLR
                                   :
        v.                  :     TRIAL BY JURY DEMANDED
                                   :
COMMISSIONER STANLEY TAYLOR,   :
WARDEN THOMAS CARROLL, DR.     :
TAMMY Y. KASTRE, FCM,          :
LINDA HUNTER – FCM – CMS        :
CORRECTIONAL MEDICAL SYSTEMS,  :
S/LT. ALISHA PROFACI           :
LT. PETER FORBES,              :
                                   :
        Defendant.        :

## CERTIFICATE OF SERVICE

     I hereby certify that on this date, I electronically filed the *Memorandum of Points and Authorities of Correctional Medical Services, Inc, in Support of its Amended Motion to Dismiss or in the Alternative for Summary Judgment* with the Clerk of the Court using CM/ECF which will send notification of such filing(s) and have mailed by United States Postal Service all Exhibits filed under Seal to the following:

Stacey Xarhoulakos, Esquire           Daniel L. McKenty, Esquire
Deputy Attorney General               Heckler & Frabizzio
Delaware Department of Justice         800 Delaware Avenue, Suite 200
Carvel State Office Building            P.O. Box 128
830 North French Street, 6th Floor    Wilmington, DE 19899-0128
Wilmington, DE 19801

and hereby certify that on this date, I have mailed by United States Postal Service, the *Memorandum of Points and Authorities of Correctional Medical Services, Inc, in Support of its Amended Motion to Dismiss or in the Alternative for Summary Judgment* and all Exhibits to the following non-registered participant:

Aaron K. Carter
SBI# 179415
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN


BY:     */s/ Eric Scott Thompson*
ERIC SCOTT THOMPSON, ESQ. (DE I.D. #4633)
1220 North Market Street, 5th Fl.
P.O. Box 8888
Wilmington, DE 19899-8888
(302) 552-4370
Attorney for Defendant, Correctional Medical
Services, Inc.


DATED:  February 7, 2008
15/581342.v1