IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AARON K. CARTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-561-SLR |
| | ) |
| COMMISSIONER STANLEY TAYLOR, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

Aaron K. Carter, Pro Se Plaintiff. Delaware Correctional Center, Smyrna, Delaware.

Stacey Xarhoulakos, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants Thomas Carroll, Alisha Profaci, and Peter Forbes.

Kevin J. Connors, Esquire, Marshall, Dennehey, Warner, Coleman & Goggin. Counsel for Defendant Correctional Medical Services.

**MEMORANDUM OPINION**

Dated: May 28, 2008
Wilmington, Delaware

**ROBINSON, District Judge**

**I. INTRODUCTION**

Plaintiff Aaron K. Carter ("plaintiff"), an inmate at the Delaware Correctional Center ("DCC"), Smyrna, Delaware, filed this civil rights complaint pursuant to 42 U.S.C. § 1983.[1] (D.I. 2) Presently before the court is the motion to dismiss or, in the alternative, motion for summary judgment of defendants Warden Thomas Carroll ("Carroll"), Staff Lt. Alisa Profaci ("Profaci"), and Lt. Peter Forbes ("Forbes") (collectively "State defendants") and the amended motion to dismiss or, in the alternative, motion for summary judgment, of defendant Correctional Medical Services, Inc. ("CMS"). (D.I. 55, 56) For the reasons set forth below, the court will grant the motions.

**II. PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff, who suffers from acquired immune deficiency syndrome ("AIDS") and hepatitis C, alleges that defendants are deliberately indifferent to his serious medical needs. On March 1, 2004, he was placed in the Security Housing Unit ("SHU"). He alleges that it took months to see a doctor; he was not permitted to take AIDS medications due to his housing assignment; on one occasion he passed blood and sought medical attention but did not receive it; he was unable to take his medication at prescribed times; and CMS refused to provide him medical services due to his housing assignment. Plaintiff also alleges that he was served reduced rations of food which affected his health. He alleges that between June 30, 2005 and July 10, 2005, his medical problems included passing blood, rashes, weight loss, and dizziness, all compounded by the refusal to refill his medications.

---

[1] He also raised a claim under the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12132, dismissed on March 29, 2008. (D.I. 61)

State defendants and CMS move to dismiss pursuant to Federal Rule Civil Procedure 37 on the basis that plaintiff willfully and knowingly frustrated the discovery process. Alternatively, State defendants move for summary judgment on the bases that they did not play a role in the alleged deprivation of plaintiff's constitutional rights, they cannot be held liable in their supervisory capacities, and they were not deliberately indifferent to plaintiff's medical needs. CMS also moves for summary judgment, in the alternative, on the bases that plaintiff failed to allege its personal involvement, it cannot be held liable under a theory of respondeat superior, plaintiff failed to assert a policy or custom of deliberate indifference to his serious medical needs, and plaintiff's medical negligence claims fail.[2]

Plaintiff responds that summary judgment is inappropriate. He did not, however, produce any evidence to rebut defendants' positions. (D.I. 63, 65)

## III. DISCUSSION

### A. Standard of Review

The court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of material fact, the court may not weigh the evidence or determine the truth in the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249

---

[2]The court will not address the issue of standing to maintain the case as a class action or the ADA issue inasmuch as the court previously dismissed the claims. (See D.I. 61) Additionally, because the court will grant defendants' motions for summary judgment, it will not address the issue of dismissal pursuant to Rule 37.

(1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).

The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). Where the movant is the defendant, or the party that does not have the burden of proof on the underlying claim, it "has no obligation to produce evidence negating its opponent's case." National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1581 (3d Cir. 1992). Rather, the movant can simply "point to the lack of any evidence supporting the non-movant's claim." Id. A party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue" for trial. Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**B. State Defendants**

State defendants argue that they lack the requisite personal involvement to invoke liability under § 1983. Plaintiff argues that each defendant was aware of his serious medical conditions, via either grievance or personal letters, but ignored them. (D.I. 65)

In order to prevail under § 1983, plaintiff must establish that each defendant had personal involvement in the alleged wrongs since liability cannot be predicated solely on the operation of respondeat superior. Rizzo v. Goode, 423 U.S. 362 (1976); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, supra. Personal involvement may be shown by either personal direction or actual knowledge and acquiescence in a subordinate's actions. Id. Plaintiff must show: "1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." Hunter v. Schouppe, Civ. No. 06-1291, 2007 WL 4554251 (W.D. Pa. 2007) (citing Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)).

Warden Carroll argues that, while plaintiff alleges he wrote to him and the letters were ignored, he has produced no evidence to support this assertion. The complaint also alleges that Profaci and Forbes were aware of plaintiff's treatment, that he complained to them about cold food, lack of medication, grievances and negative treatment by the correctional staff, but they did nothing. Forbes avers that he has no knowledge as to plaintiff's medical condition or treatment. (D. I. 55, ex. D) He does not recall any specific complaints from plaintiff since he often receives complaints from inmates and, without further information, cannot recall if plaintiff complained to him, what the complaint might have been, or how it may have been resolved. (Id.) Similarly, Profaci avers that she has no knowledge as to plaintiff's medical condition or treatment.

(D. I. 55, ex. C) Profaci oversees more than 558 inmates and does not have any specific recollection of complaints from plaintiff. (Id.) Plaintiff's response to State defendants' motion contains argument, but nothing else to rebut the affidavits of Profaci and Forbes. Notably, his discovery responses do not mention Profaci or Fores. (D.I. 51, 70)

Warden Carroll points to the lack of evidence against him. Plaintiff alleges, but has not proven, that he wrote letters to Warden Carroll.[3] Indeed, the court has reviewed plaintiff's discovery responses and finds nothing to support the allegations directed towards Carroll. (See D.I. 51, 70) Despite his argument, plaintiff has failed to point to specific facts showing there is a genuine issue for trial.

Plaintiff's discovery responses do show that he filed grievances seeking medical treatment. (D.I. 51) Grievances, however, are not enough to impute knowledge to State defendants. See Rode, 845 F.2d at 1208 (if the filing of a grievance were enough to put a defendant on notice for personal liability, it would allow for personal liability in almost every case); Brooks v. Beard, 167 Fed. Appx. 923, 925 (3d Cir. 2006) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); Cf. Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa.1997), aff'd, 142 F.3d 430 (3d Cir.1998) (prison officials' failure to respond to

---

[3]Nor would the simple act of writing a letter to Warden Carroll establish deliberate indifference. Warden Carroll is not a physician, and cannot be considered deliberately indifferent merely because he may have failed to respond directly to the medical complaints of a prisoner who was already being treated by prison doctors. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

5

inmate's grievance does not state a constitutional claim).

Viewing the facts in the light most favorable to plaintiff, the court finds that plaintiff has not provided evidence that State defendants had personal knowledge of, or in any way acquiesced to, plaintiff's situation. Therefore, the court will grant summary judgment in favor of State defendants.[4]

### C. CMS

CMS moves for summary judgment, arguing that plaintiff failed to allege its personal involvement, it cannot be held liable under a theory of respondeat superior, plaintiff failed to assert a policy or custom of deliberate indifference to his serious medical needs, and plaintiff's medical negligence claims fail. In the court's memorandum opinion dated March 29, 2008, it determined that plaintiff had adequately alleged deliberate indifference to a serious medical need based upon the policy or custom of CMS with regard to chronic care inmates housed in SHU or MHU. Accordingly, the court will first address the policy or custom issue .

#### 1. Policy or Custom

CMS argues that plaintiff has neither alleged any policy or custom by CMS that proximately caused deliberate indifference to plaintiff's serious medical needs, nor identified any CMS official with final policymaking authority. Plaintiff argues, but provides no support, that there were "written policies concerning when plaintiff's medication were to be taken, and CMS elected to ignore the written policies." (D.I. 63)

---

[4]Having found lack of personal involvement on behalf of State defendants, the court will not address whether plaintiff establishes an Eighth Amendment deliberate indifference to serious medical needs claim.

He alleges that he was not provided medication at specifically prescribed times, there was no follow-up when he complained of cold meals, he was locked in his cell with access only to individuals who approached his door, and nothing establishes that his treating physicians were board certified to treat AIDS or hepatitis C.

When a plaintiff relies on the theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir. 1989); Miller v. Correctional Med. Sys., Inc., 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that CMS is directly liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

Plaintiff is HIV positive and has hepatitis C. (D.I. 58) Plaintiff produced copies of many grievances he submitted regarding the administration of his medication and his medical treatment. (D.I. 51) The court was not provided with documentation regarding the results of six grievances[5], but was provided with documentation regarding the

---

[5]A grievance submitted August 18, 2004, requests that physicians treating plaintiff use HIPPA confidentiality guidelines and complains that his present medication is no longer effective; a grievance submitted September 4, 2004, complains that when plaintiff's daily medication was disbursed, one pill was missing; a grievance submitted two days later, on September 6, 2004, makes a similar complaint regarding the same medication; a grievance submitted September 30, 2004, complains of incompetent staff when plaintiff did not receive his medication for two consecutive days, and on the third day, he did not receive his evening medication; a grievance, submitted July 10, 2005,

7

outcome of the following grievances: Grievance #5895, submitted August 12, 2004, complains that a nurse did not provide the total dosage of medication and was sent for investigation. Grievance #6651, submitted September 2, 2004, requests the correct daily dosages of medication. It was sent for investigation with a resolution that plaintiff would receive the correct daily medication dose. Plaintiff refused to sign the grievance as resolved, and requested a level II hearing. Grievance #11662, submitted February 14, 2005, complains that plaintiff has lost weight, has rashes, and gets dizzy at times. Plaintiff asked to see a physician using HIPPA guidelines and to have his blood tested. The grievance was denied and withdrawn following lab work drawn on February 16, 2005, and a physician's visit on March 16, 2005. Grievance # 13805, submitted April 28, 2005, requests a second opinion because plaintiff disagreed with the treatment provided by Dr. Niaz. The matter was investigated and resolved. In grievance # 15463, submitted July 11, 2005, plaintiff complains that he had urine in his blood on June 30, 2005; he informed the sergeant who told plaintiff he would be seen by the evening nurse, but was not. Plaintiff states that he passed a kidney stone. The matter was investigated, but plaintiff refused to sign that the issue was resolved and requested a level II hearing. Grievance # 16740, submitted August 24, 2005, complains that plaintiff did not receive his medication three out of five days; a nurse granted his request to go the sick call station and she provided treatment. The grievance asks that the nurse be commended and that other nurses be reprimanded. It is unclear if the matter was

---

complains of rashes, dizziness, weight loss, and sweats and asks for a second opinion; and a grievance submitted July 20, 2005, complains that eating three cold meals per day is not good for plaintiff's medical conditions.

resolved. Finally, grievance # 18540, submitted September 16, 2005, asks for a change of policy making it mandatory that all chronic care patients receive daily medications. The matter was investigated and resolved.

The voluminous medical records submitted by CMS indicate that plaintiff receives medical treatment and that his chronic conditions are monitored. Dr. Lawrence McDonald ("Dr. McDonald"), the medical director of CMS, stated that a review of plaintiff's medical records indicates that, because of plaintiff's active HIV status and his treatment regime for that condition, it was contraindicated to begin treatment for plaintiff's hepatitis C condition. (D.I. 58, ex. 5) Laboratory testing on March 5, 2003, indicated that plaintiff was resistant to a number of medications and that his medications were adjusted to provide treatment with non-resistant medications.[6] (Id.) Plaintiff's conditions are monitored with quarterly blood testing, follow-up medical visits, and medication adjustments. (Id.) As of January 8, 2008, testing indicated that plaintiff's HIV condition had improved to a non-detectable level of the HIV virus. (Id.) Because the HIV is under control, plaintiff may be considered for active hepatitis C treatment. (Id.)

Plaintiff has failed to set forth specific facts showing that there is a genuine issue

---

[6] Plaintiff's medical records contain laboratory results for testing conducted in December 2003; May, August, and November 2004; January, February, March, April, July, and September 2005; and January, May, and August 2006. (D.I. 58, ex. 2) Progress notes indicate that plaintiff was seen in July, September, November, and December 2004; February, March, April, and September 2005; January, May, and August 2006. (Id. at ex. 3) Physicians' orders for February, March, May, July, August, September, November, and December 2004; January, February, March, April, May, July, August, September, November, and December 2005; and January, March, May, July, August, and September 2006 reveal the frequent ordering of medications, lab work, and nutritional evaluations. (Id. at ex. 4)

for trial. Indeed, it is evident from the discovery reviewed by the court and the medical records submitted by CMS, that plaintiff is treated for his chronic conditions even though at times he disagrees with the type of treatment and/or medication provided. Further, plaintiff's discovery responses indicate that the bulk of his numerous grievances were addressed and resolved in some fashion. Finally, plaintiff provided nothing to support his claim that CMS has policies which establish deliberate indifference to plaintiff's serious medical needs.

The pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, do not support plaintiff's claims against CMS. Therefore, the court will grant CMS' motion for summary judgment on plaintiff's § 1983 claim.

### 2. Medical Negligence Claim

Plaintiff attempts to allege a state claim for medical malpractice. CMS argues that summary judgment is appropriate because plaintiff failed to present expert medical testimony on both the deviation from the applicable standard of care and causation. Plaintiff argues that he has presented facts that substantiate his treatment deviated from the application standards of care and causation. He agues that his treating physicians were not board certified to treat AIDS or hepatitis C.

In Delaware, medical malpractice is governed by the Delaware Health Care Negligence Insurance and Litigation Act. 18 Del. C. § 6801(7). When a party alleges medical negligence, Delaware law requires the party to produce expert medical testimony detailing: (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury." Bonesmo v. Nemours Found., 253 F. Supp. 2d 801, 804 (D. Del. 2003) (quoting Green

v. Weiner, 766 A.2d 492, 494-95 (Del. 2001)) (internal quotations omitted); 18 Del. C. § 6853.

Plaintiff's medical records do not support his claim of medical negligence. Moreover, plaintiff has produced nothing to support such a claim. Therefore, the court will grant CMS' motion for summary judgment as a matter of law.

## IV. CONCLUSION

Based upon the foregoing analysis, the court will grant defendants' motions to dismiss or, in the alternative, motions for summary judgment. (D.I. 55, 56) An appropriate order will issue.